[No. A097940. First Dist., Div. Five. Jan. 28, 2003.]

MYRON JACKSON, a Minor, etc., et al., Plaintiffs and Respondents, v. STEVEN GOURLEY, as Director, etc., Defendant and Appellant.

968

COUNSEL

Bill Lockyer, Attorney General, Miguel A. Neri, Fiel D. Tigno and Robert Andrew Harkness, Deputy Attorneys General, for Defendant and Appellant.

Robert E. Drescher for Driving School Association of California, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Ronald Michael Cordova for Plaintiffs and Respondents.

OPINION

GEMELLO, J.—May the Department of Motor Vehicles (DMV) reject certificates of completion from students who take a driver education correspondence course from a private high school, on the ground that correspondence courses are per se inadequate? We hold that it may not. The Legislature has expressly declined to regulate the format and content of private school driver education courses. The DMV may not regulate what the Legislature has chosen to leave unregulated. The trial court issued a writ of mandate compelling the DMV to rescind its policy and accept certificates of completion from Pacific High School, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

For persons under the age of 18 in California, learning to drive entails two forms of instruction, driver education and driver training. (Veh. Code, § 12814.6, subd. (a)(3).) Driver education covers the "classroom" aspects of learning to drive—the rules of the road, the causes and consequences of accidents, and the like. (Ed. Code, §§ 51220, subd. (j), 51851.) Driver training involves the practical or laboratory aspects, including time behind the wheel. (*Id.*, § 51852.)

Pacific High School (Pacific) is a private high school. It offers a full curriculum of correspondence courses, including a correspondence course in

driver education. Pacific does not offer driver training courses. Myron Jackson is a full-time student at a San Francisco high school that does not offer driver education. He enrolled in and completed Pacific's driver education correspondence course.

Students seeking a learner's permit generally must demonstrate enrollment in or completion of a driver education course to the DMV. (Veh. Code, § 12509.) Applicants seeking a provisional license also need to demonstrate completion of a driver education course. (*Id.*, § 12814.6, subd. (a)(3).) The DMV has created a form, DL 387 (also known as a certificate of completion), for these purposes.

Until 2001, the DMV accepted certificates of completion from Pacific. On August 31, 2001, the DMV wrote to Pacific, raising questions about Pacific's compliance with various provisions of the Vehicle and Education Codes. Pacific responded in writing and by telephone, addressing the alleged shortcomings. Its response failed to satisfy the DMV, and on October 10, 2001, the DMV notified Pacific that all certificates of completion in its possession were cancelled and that as of October 15, 2001, the DMV would no longer accept certificates of completion from Pacific. The DMV took the position that correspondence courses did not satisfy the requirements of the Vehicle and Education Codes, and therefore it could not accept the certificates of completion issued by Pacific. It rejected Jackson's October 30, 2001, certificate of completion.

Pacific and Jackson sued, seeking a writ of mandate to prevent the DMV from enforcing its new policy. The trial court granted the writ, and we denied a petition for writ of supersedeas that would have allowed the DMV to enforce its policy during the pendency of this appeal. The DMV has timely appealed from the trial court's order.[1]

DISCUSSION

I. *Standard of Review*

■ Code of Civil Procedure section 1085, providing for writs of mandate, permits challenges to ministerial acts by California state agencies. To obtain such a writ, the petitioner must show (1) a clear, present, ministerial

---

[1]On appeal, we granted the request of the Driving School Association of California, Inc. (DSAC), to file an amicus curiae brief. Amicus curiae is a trade association of California commercial driving schools. It previously obtained a court order from the San Diego Superior Court restricting the entities to which the DMV could issue certificates of completion. This case arose after DSAC brought Pacific's status as a correspondence school to the DMV's attention and initiated contempt proceedings.

duty on the part of the respondent, and (2) a correlative clear, present, and beneficial right in the petitioner to the performance of that duty. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540 [28 Cal.Rptr.2d 617, 869 P.2d 1142]; *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 972 [84 Cal.Rptr.2d 179].) A ministerial duty is an act that a public officer is obligated to perform in a prescribed manner required by law when a given state of facts exists. (*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].)

On appeal in a mandate proceeding, we apply the substantial evidence test to the trial court's factual findings, if any. (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53 [80 Cal.Rptr.2d 137].) When the duty asserted is one arising out of statute, we review the issues of statutory construction de novo. (*Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53, 59 [62 Cal.Rptr.2d 600]; see *Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 504-507 [204 Cal.Rptr. 711, 683 P.2d 710].)

 We are asked to decide whether the DMV may refuse driver education certificates of completion for correspondence courses. In short, must the "classroom" component of learning to drive actually take place in a classroom? The parties agree on all material facts, but disagree over the application of the Vehicle Code and Education Code to those facts. Presented with pure questions of law, we review the trial court's decision de novo.

II. *The Vehicle Code Does Not Authorize the DMV to Refuse Private School Correspondence Course Certificates of Completion*

We must answer two questions with respect to the Vehicle Code: (1) does it prohibit private school driver education correspondence courses, and (2) if not, does it give the DMV discretion to adopt a rule barring such courses? In each instance, we conclude that the answer is no.

A. *The Vehicle Code Does Not Regulate the Format or Content of Driver Education Courses*

We begin with Vehicle Code section 12814.6, which the DMV relies on as the primary source for its authority to reject private school certificates of completion based on the method of instruction. Section 12814.6 governs the issuance of provisional licenses to Californians between 16 and 18 years of age. To obtain a provisional license, a person must meet, inter alia, one of two requirements: "(A) Satisfactory completion of approved courses in

automobile driver education and driver training maintained pursuant to provisions of the Education Code in any secondary school of California, or equivalent instruction in a secondary school of another state," or "(B) Satisfactory completion of six hours or more of behind-the-wheel instruction by a driving school or an independent driving instructor licensed under Chapter 1 (commencing with Section 11100) of Division 5 and either an accredited course in automobile driver education in any secondary school of California pursuant to provisions of the Education Code or satisfactory completion of equivalent professional instruction acceptable to the department." (Veh. Code, § 12814.6, subd. (a)(3)(A) & (B).)

On its face, Vehicle Code section 12814.6 does not set standards for the format or content of driver education courses. Under subdivision (a)(3)(A), the course must be "approved" and "maintained pursuant to provisions of the Education Code in any secondary school of California." Under subdivision (a)(3)(B), the course must be "accredited" and provided "in any secondary school of California pursuant to provisions of the Education Code." Vehicle Code section 12814.6 incorporates by reference the requirements of the Education Code, but it does not add its own requirements.

The DMV argues that Vehicle Code section 12814.6 precludes acceptance of correspondence courses because the section's use of the word "in" requires driver education courses to be conducted in the physical confines of the classroom: a driver education course must be "maintained pursuant to provisions of the Education Code *in* any secondary school of California." (Veh. Code, § 12814.6, subd. (a)(3)(A), italics added; accord, *id.*, subd. (a)(3)(B).) The DMV reads this use of the word "in" too narrowly. The word connotes not only presence in a physical place, but also enrollment in an institution. The phrase "in school" carries the meaning "receiving education at a school." (7 Oxford English Dict. (2d ed. 1989) p. 759.) The Legislature has given each local school board the responsibility of "enforc[ing] in its schools the courses of study and the use of textbooks and other instructional materials prescribed and adopted by the proper authority." (Ed. Code, § 51050.) We do not read this to mean that when students are on field trips, the school board is without jurisdiction. The State Department of Education exercises "general supervision over the courses of physical education in elementary and secondary schools of the state." (Ed. Code, § 33352.) We have no doubt that those duties extend to courses and sports, such as cross-country, conducted almost exclusively outside the confines of the classroom or gymnasium. In this context, "in" is not shorthand for "in the classroom." Nothing in Vehicle Code section 12814.6 precludes completion of driver education through a correspondence course.

*In re Shinn* (1961) 195 Cal.App.2d 683 [16 Cal.Rptr. 165] and *People v. Turner* (1953) 121 Cal.App.2d Supp. 861 [263 P.2d 685], upon which the

DMV relies, do not support its interpretation of the word "in." In each case, parents home-schooling their children were found to have violated the then existing versions of various state compulsory education laws. (*In re Shinn,* at pp. 693-694; *People v. Turner,* at p. 868.) These cases did not interpret the phrase "in school," and they shed no light on the issue at hand.[2]

Like Vehicle Code section 12814.6, other provisions in that code addressing driver education courses do not regulate their format or content. For example, Vehicle Code section 12509 makes eligibility for a learner's permit for a person under the age of 17 years 6 months contingent on the taking or completion of "an approved course in automobile driver education" in some cases. (Veh. Code, § 12509, subd. (a).) Section 12509 does not otherwise specify what the course should address. Vehicle Code section 12814.8 authorizes a pilot study to evaluate the effectiveness of driver education correspondence courses. It does not restrict the format or content of such courses, and it rests on the assumption that such courses are currently being offered lawfully. (Veh. Code, § 12814.8, subd. (c)(2)(A) [selecting providers who have offered driver education correspondence courses for at least four years]; *id.,* subd. (n) [affirming that such providers shall be allowed to continue to provide courses to nonpilot-study students].) We find nothing in the provisions of the Vehicle Code prohibiting driver education correspondence courses.

B. *The Vehicle Code Does Not Authorize the DMV to Regulate the Format or Content of Private School Driver Education Courses*

We likewise conclude that Vehicle Code section 12814.6 does not authorize the DMV to adopt rules governing the format or content of private school driver education courses.

Vehicle Code section 12814.6, subdivision (a)(3)(A) and (B) requires that driver education courses be "approved" or "accredited." However, it does not specify that the DMV shall approve or accredit these courses. In notable contrast, Vehicle Code section 12814.6, subdivision (a)(3)(B) expressly authorizes the DMV to evaluate what constitutes "equivalent professional instruction" and to approve only that which it deems "acceptable." Subdivision (a)(3)(B) spells out the standards the DMV should apply, referring the DMV to requirements for driver education established by the Education Code: "To be acceptable to the department, the professional instruction shall

---

[2]We note as well that the modern compulsory education law excepts private school students. (Ed. Code, § 48222.) While the exception is limited to "full-time day school[s]" (*ibid.*), this does not preclude students from seeking out supplemental instruction through correspondence courses. (Cf. Ed. Code, § 51740.) Nothing in the compulsory education law proscribes correspondence courses such as the one at issue here.

meet minimum standards to be prescribed by the department, which standards shall be at least equal to the requirements for driver education and driver training contained in the rules and regulations adopted by the State Board of Education pursuant to the Education Code." (Veh. Code, § 12814.6, subd. (a)(3)(B).) The Legislature knew how to express its intent to delegate to the DMV the role of evaluating driver instruction; in section 12814.6, it expressed that intent with respect to commercial instruction, but not with respect to secondary school instruction.

Division 5 of the Vehicle Code, governing occupational licensing and business regulations, reinforces our conclusion. Vehicle Code section 11113 authorizes the director of the DMV to "prescribe rules and regulations for driving schools regarding the conduct of courses of driver education and driver training, including curriculum, facilities, and equipment." (Veh. Code, § 11113, subd. (a).) In contrast, Vehicle Code section 11101 expressly excludes from such regulations "[p]ublic schools or educational institutions in which driving instruction is part of the curriculum." (Veh. Code, § 11101, subd. (a)(1).)[3] These sections reflect the same division of responsibility seen in section 12814.6: the DMV is to regulate the curricula of commercial driving schools, but not of secondary schools.

Urgency legislation passed in September 2002 underlines this point. Senate Bill No. 2079 (2001-2002 Reg. Sess.) amended Vehicle Code section 11101 to add a new subdivision (c), which provides in relevant part, "Nothing in this chapter shall be construed to direct or restrict courses of instruction in driver education offered by private secondary schools . . . ." (Stats. 2002, ch. 774, § 2.) This amendment emphasizes that the DMV is not to regulate secondary school curricula.[4]

Instead, the Legislature has granted the DMV an advisory role. Thus, "[t]he director may assign qualified employees of the department to advise with the State Board of Education and with the governing boards of districts maintaining secondary schools in the preparation, establishment, and conduct of courses in automobile driver education and automobile driver training in secondary schools under the provisions of the Education Code." (Veh. Code, § 1657.) While the DMV may not promulgate regulations governing secondary school driver education curricula, it may consult with both the state and local boards of education concerning course curricula. The Legislature thus chose to leave primary responsibility for the creation of such

---

[3]As elsewhere defined, "educational institution" includes private secondary schools such as Pacific. (Ed. Code, § 210.1.)

[4]Pacific and Jackson request that we take judical notice of the recent passage of Senate Bill No. 2079. We grant their request.

curricula to those entities that are traditionally charged with curriculum oversight—local school boards.

We reject as well the DMV's argument that because section 12814.6 is part of the Vehicle Code, the Legislature must have intended to entrust oversight of the driver education courses it references to the DMV. Both that section and other portions of the Vehicle Code demonstrate that the DMV's argument is overly simplistic. The Legislature did not intend to exclude the DMV from any role, recognizing the benefit its expertise might yield in an advisory capacity, but it chose not to vest the DMV with primary regulatory authority.

The DMV asks us to defer to its various interpretations of Vehicle Code section 12814.6. ■ However, "the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) We must "independently judge the text of the statute, taking into account and respecting the agency's interpretation . . . ." (*Ibid.*) ■ Having exercised our independent judgment, we conclude that the DMV's interpretation of Vehicle Code section 12814.6 is unsupportable in light of the section's plain text, the surrounding provisions in the Vehicle Code, and recent legislative actions.

III. *The Education Code Does Not Bar Private School Driver Education Correspondence Courses*

We turn to the Education Code. While the Vehicle Code does not grant the DMV the authority to regulate driver education courses, the DMV may nevertheless refuse to accept certificates of completion for courses that are not "maintained pursuant to provisions of the Education Code." (Veh. Code, § 12814.6, subd. (a)(3)(A).) However, nothing in the Education Code precludes completion of the driver education requirement through a private correspondence course.

Education Code sections 51220, subdivision (j) and 51220.1 specify the content of driver education courses.[5] However, these sections dictate only the public school curriculum. The Legislature's guidelines for driver education were adopted pursuant to its recognition that, "because of the common

---

[5]Education Code section 51220 provides: "The adopted course of study for grades 7 to 12, inclusive, shall offer courses in the following areas of study: [¶] . . . [¶] (j) Automobile driver education, designed to develop a knowledge of the provisions of the Vehicle Code and other laws of this state relating to the operation of motor vehicles, a proper acceptance of

needs and interests of the citizens of this state and the nation, there is a need to establish a common state curriculum for the *public schools* . . . ." (Ed. Code, § 51002, italics added; see *California Teachers Assn. v. Board of Trustees* (1978) 82 Cal.App.3d 249, 254-255 [146 Cal.Rptr. 850].) Sections 51220, subdivision (j) and 51220.1 do not purport to regulate a private school's curriculum.

Education Code sections 51850 through 51852 regulate the duration and some aspects of instruction for driver training and driver education courses. For example, section 51851 requires that "[a] course of instruction in automobile driver education shall: [¶] (a) Be of at least 2½ semester periods and shall be taught by a qualified instructor." Again, surrounding provisions demonstrate that these rules do not extend to private school driver education courses. Section 51852, subdivision (h) makes this limitation express: "Nothing in this chapter [Authorized Classes and Courses of Instruction (Ed. Code, ch. 5, §§ 51700-51879.7)] shall be construed to direct or restrict courses of instruction in the classroom phase or the laboratory phase of driver education offered by private elementary and secondary schools . . . except that each student enrolled in a course shall satisfactorily complete a minimum of six hours of on-street behind-the-wheel driving instruction. This chapter shall not be construed to limit eligibility for a provisional driver's license for pupils who have completed driver education or driver training courses' offered in private elementary or secondary schools." The only content requirement that applies to private schools is an on-street driving requirement for driver training courses. Whatever other limits sections 51850 through 51852 may place on public school driver education, they do not apply to private school driver education.

Education Code section 51852, subdivision (h) is notable for two additional reasons. First, it was amended by Senate Bill No. 2079 (2001-2002 Reg. Sess.) in September 2002 to read "Nothing in this chapter . . . ." (Stats. 2002, ch. 774, § 1.) Senate Bill No. 2079 was passed as urgency legislation and took effect immediately. (Stats. 2002, ch. 774, § 8.) Section 51852, subdivision (h) had previously begun, "Nothing in this *section* shall be construed . . . ." (italics added), thus creating the potential for ambiguity over whether sections other than section 51852 might have some application

---

personal responsibility in traffic, a true appreciation of the causes, seriousness and consequences of traffic accidents, and to develop the knowledge and attitudes necessary for the safe operation of motor vehicles. A course in automobile driver education shall include education in the safe operation of motorcycles."

Education Code section 51220.1 provides: "In addition to the requirements specified in subdivision (j) of Section 51220, automobile driver education shall be designed to develop a knowledge of the dangers involved in consuming alcohol or drugs in connection with the operation of a motor vehicle."

to private school courses. Senate Bill No. 2079's amendment of Education Code section 51852, like its amendment of Vehicle Code section 11101, *ante,* removes all doubt that private school driver education courses are to remain unregulated.

Second, Education Code section 51852, subdivision (h) directs that private school students shall be equally eligible for provisional driver's licenses. In essence, it imposes a nondiscrimination requirement on the DMV: In issuing provisional driver's licenses, the DMV shall not discriminate between public school students who took driver education courses subject to the Legislature's guidelines and private school students who took courses not subject to those guidelines. In the absence of a prohibition against correspondence courses—and we have found none—the DMV's policy denies private school students the equal treatment guaranteed by Education Code section 51852, subdivision (h).

The DMV contends that when Vehicle Code section 12814.6 incorporated the Education Code, requiring courses to be completed "pursuant to provisions of the Education Code," it extended the foregoing Education Code requirements to private as well as public schools. We disagree. When a public school student completes a driver education course, that course must satisfy Education Code section 51220, subdivision (j), section 51851, and any other applicable provisions. When a private school student completes a driver education course, that course must also satisfy all applicable Education Code requirements—but the Education Code limits those requirements to a few provisions dealing with the school as a whole. (See Ed. Code, §§ 33190, 33191.) To the extent Vehicle Code section 12814.6 incorporates by reference the statutory requirements in the Education Code, it also incorporates by reference the statutory limits on those requirements. We decline to incorporate selectively some provisions of the Education Code, such as section 51851, but not others, such as section 51852, subdivision (h).

The DMV contends that this reading of the interplay between Vehicle Code section 12814.6 and the Education Code erases the word "any" from section 12814.6. Section 12814.6 provides that a driver education course may be completed "in any secondary school of California pursuant to provisions of the Education Code." (Veh. Code, § 12814.6, subd. (a)(3)(B).) According to the DMV, if we exempt private schools from requirements such as those in Education Code section 51851, then only some schools must give their courses "pursuant to provisions of the Education Code." As explained above, *every* secondary school driver education course, whether public or private, must satisfy all applicable provisions of the Education Code. The fact that the Education Code imposes far more stringent requirements on public school courses than on private school courses does not

affect this conclusion. The Legislature has chosen to treat public and private schools differently, and has not seen fit to spell out further the content or format of private school driver education courses. The fact that it has declined to do so does not license the DMV to step in and do so in its place.

Amicus curiae DSAC argues that Education Code section 41912, subdivision (b) authorizes regulation of private school driver education courses. Section 41912, subdivision (b) provides that driver education "properly belongs in the high school curriculum on a basis of having comparable standards of instruction, quality, teacher-pupil ratio and class scheduling . . . as in other courses in the regular academic program." To the extent section 41912 sets out any standards, it sets out relative, not absolute standards: driver education should receive treatment and resources equal to those given other subjects. This standard has no impact on private school driver education courses. Instead, it highlights the Legislature's decision to leave private school curricula largely unregulated. Nothing in the Education Code establishes "standards of instruction, quality, teacher-pupil ratio and class scheduling" for other private school courses. Consequently, nothing in section 41912 authorizes regulation of private school driver education courses.

We acknowledge the serious safety concerns referenced by the DMV and amicus curiae DSAC. Teenage auto fatalities are a matter of urgent concern. (See Ed. Code, § 41912.) The Legislature has responded to the problem by imposing rigorous on-the-road training requirements. (Veh. Code, § 12814.6, subd. (a)(3)(B) & (4); Ed. Code, § 51852.) Our decision does not affect these requirements, nor does it affect the DMV written examination every applicant must pass to receive a provisional license. (Veh. Code, § 12814.6, subd. (a)(5).)

Despite the general seriousness of the matter, the Legislature has not yet restricted driver education correspondence courses. A two-year pilot study has been authorized to evaluate whether such courses are any less, or more, effective than traditional classroom instruction. (Veh. Code, § 12814.8.) Clearly, the Legislature is aware of the issue and is prepared to adopt measures to reduce the number of fatalities involving youthful drivers if and when it determines what action is appropriate. In the interim, it is neither our role nor the DMV's role to presume the outcome of the pending study, to assume that any nexus will be shown between correspondence instruction and increased risks, nor to preempt the Legislature's decision on the proper response. The DMV's policy of refusing to accept certificates of completion based on correspondence courses in driver education does precisely that.

A writ of mandate will issue to compel the exercise of a clear and present ministerial duty. (*Transdyn/Cresci JV v. City and County of San Francisco,*

*supra,* 72 Cal.App.4th at p. 752.) The governing statutes deny the DMV the discretion to refuse certificates of completion for private school correspondence courses in driver education. Pacific and Jackson have established their entitlement to a writ of mandate.

## DISPOSITION

The order granting issuance of a writ of mandate is affirmed.

Stevens, Acting P. J., and Simons, J., concurred.