[No. F059443. Fifth Dist. Dec. 29, 2010.]

ZC REAL ESTATE TAX SOLUTIONS LIMITED, Plaintiff and Appellant,
v.
GORDON B. FORD, as County Treasurer, etc., et al., Defendants and Respondents.

COUNSEL

Mayall, Hurley, Knutsen, Smith & Green, Jeffrey B. Setness and Robert Wasserman for Plaintiff and Appellant.

John P. Doering, County Counsel, and Deirdre E. McGrath, Deputy County Counsel, for Defendants and Respondents.

Andrea Sheridan Ordin, County Counsel (Los Angeles) and Richard Girgado, Deputy County Counsel, for Mark J. Saladino, Treasurer-Tax Collector for the County of Los Angeles as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**DETJEN, J.**—Revenue and Taxation Code section 4985.2, subdivision (a), provides that a penalty resulting from failure to make a timely real estate tax payment may be canceled if the failure "is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent." (All further section references are to the Rev. & Tax. Code.) The issue in this appeal is whether appellant's actions causing the delinquency meet the requirements for cancellation of a delinquency penalty imposed by respondent.

By petition for writ of mandate, appellant ZC Real Estate Tax Solutions Limited sought refund of a penalty imposed upon it by respondent Gordon B. Ford, Treasurer and Tax Collector of Stanislaus County. This appeal is from a final order of the superior court denying the petition. We affirm.

### Facts and Procedural History

A.  *The Relevant Facts*

The relevant facts are simple and uncontested. Property owners often are required to (and sometimes do so voluntarily) pay a portion of their real estate taxes with each monthly mortgage payment. The lender holds these

monthly tax payments in an escrow account until it is time to make tax payments to the local taxing authority. Appellant, asserting expertise in the myriad "unique processes, procedures, and requirements" of the various local governments, contracts with lenders to "monitor[] and issue[] the real property tax payments" held in escrow by the lenders.

California real estate taxes are payable to the tax collector of the county in which the property is located. (§§ 2601, 2602, 2613.) Taxes are paid for the fiscal year in semiannual installments due November 1 and the following February 1. (§§ 2605, 2606.) Although taxes are due on those dates, they do not become "delinquent" until a later date. Thus, the installment due on November 1 is not delinquent if it is paid by December 10. (§ 2617.)

By December 4, 2008, appellant had received eight checks from five of its lender clients, payable to Stanislaus County, covering the semiannual installment of property taxes for more than 4,400 properties in that county. The checks were in the aggregate amount of $5,510,118.76. On December 4, one of appellant's employees placed the eight checks, together with a computer disc containing supporting information required by the county, into a Federal Express mailing envelope addressed to the City and County of San Francisco Office of the Treasurer and Tax Collector. Federal Express delivered the envelope, as addressed, on December 5, 2008. San Francisco deposited the eight checks, payable to Stanislaus County, into its own bank accounts. San Francisco notified appellant on December 12, 2008, that it had received and deposited the checks.

B.  *The Aftermath*

On the same day appellant was notified by San Francisco of its receipt of the Stanislaus County tax payments (Dec. 12), appellant sent a wire transfer in the amount of $5,510,118.76 to respondent. Respondent refused this payment, on the basis the taxes were delinquent after December 10, a statutory penalty of 10 percent of the delinquency had attached, and respondent did not accept "partial payment" (i.e., the original sum without the penalty).

Meanwhile, San Francisco refused to remit the original payment, now in its own bank account, to appellant because respondent was not the payor on the eight checks. San Francisco required appellant to submit an authorization and release of liability from each of the five lenders in order to return the funds to appellant.

After further exchanges of correspondence and e-mail, San Francisco returned the money to appellant and respondent accepted payment of the tax

installment, together with a penalty of 10 percent on each of the parcels for which payment was made, in the aggregate sum of $551,011.88. Respondent rejected appellant's application for refund of the tax penalty by letter of June 2, 2009.

## C.  *This Litigation*

On August 27, 2009, appellant filed its petition for writ of mandate to compel respondent to cancel the tax penalty pursuant to section 4985.2. At a hearing on October 22, 2009, the court denied the petition. After entry of a formal order dated November 3, 2009, appellant filed a timely notice of appeal.

## Discussion

Section 4985.2 was originally enacted in 1976. (See Stats. 1976, ch. 431, § 1, p. 1103.)[1] The operative language of section 4985.2 is the same as the language of previously enacted sections permitting relief from various other tax penalties. (See § 6592, subd. (a); former § 7657, added by Stats. 1963, ch. 1325, § 2, p. 2845, repealed and reenacted with modifications by Stats. 2000, ch. 1053, § 12, p. 7832, with subsequent modifications not pertinent here.) As far as we or the parties have been able to discover, only one case has addressed the relevant statutory language as it appears in any of the various provisions. (See *People ex rel. Strumpfer v. Westoaks Investment # 27* (2006) 139 Cal.App.4th 1038 [43 Cal.Rptr.3d 548], discussed below (*Strumpfer*).)[2]

---

[1] In its current form section 4985.2 reads: "Any penalty, costs, or other charges resulting from tax delinquency may be canceled by the auditor or the tax collector upon a finding of any of the following: [¶] (a) Failure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent. [¶] (b) There was an inadvertent error in the amount of payment made by the taxpayer, provided the principal payment for the proper amount of the tax due is made within 10 days after the notice of shortage is mailed by the tax collector. [¶] (c) The cancellation was ordered by a local, state, or federal court."

[2] Despite the long-standing use of the same language in the various statutes, the relationship between the required elements for cancellation of a penalty is obscure in some circumstances, though not in those now before us. For example, in order to justify cancellation of the penalty, the delinquency must be "due to reasonable cause" and it must be due to "circumstances beyond the taxpayer's control." (§ 4985.2, subd. (a).) From a plain-language standpoint, it is unclear why the cause of the delinquency must be "reasonable" if that cause must be "beyond the taxpayer's control." Thus, it may be reasonable that the postal service occasionally misdelivers properly addressed mail; it may be unreasonable that a postal carrier suffering from mental problems stores all mail entrusted to him in his basement instead of delivering it. In either case, the cause of the delinquency is "beyond the taxpayer's control" and, arguably, within the intent of the statute, even if not within the language used by the statute. Our task is

The legislative history for section 4985.2 is largely unenlightening. For the most part, the committee reports and Department of Finance analyses merely state that the proposed bill is intended to conform the collection of property taxes with current state taxing procedures for other taxes. (See., e.g., Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 2371 (1975–1976 Reg. Sess.) Jan. 22, 1976, p. 1; Dept. of Finance, Enrolled Bill Rep. on Assem. Bill No. 2371 (1975–1976 Reg. Sess.) Mar. 30, 1976.) In a letter to the Governor urging him to sign the legislation, the sponsor of the bill stated: "The thrust of the measure is aimed at people who are hospitalized or quite ill and cannot make a timely property tax payment due to the circumstances." (Assemblyman Daniel E. Boatwright, letter to Governor Edmund G. Brown, Jr., June 28, 1976.)

As noted, there is only one case interpreting section 4985.2. That case, *Strumpfer, supra*, 139 Cal.App.4th 1038, involved a complex real estate investment scheme that went awry. (*Id.* at p. 1042.) The Commissioner of Corporations sued the general partner of several limited partnerships that owned real estate in Ventura County. The court appointed a receiver for the properties. The taxes on the properties had not been paid. In order to avoid imminent tax sales of the properties, the receiver arranged for some of the limited partners and secured lenders to pay the delinquent taxes and penalties. Those persons then requested the court with jurisdiction of the Commissioner of Corporations action to order the county to refund the penalties, on the basis that the limited partners had no reason to know the general partner had failed to pay the taxes. (*Id.* at pp. 1044–1046.)

The trial court granted relief, asserting " 'broad powers over administration' " of property subject to a receivership. (*Strumpfer, supra*, 139 Cal.App.4th at p. 1046.) The trial court based its action on section 4985.2, subdivision (c). On appeal, the taxpayers contended subdivision (c) granted the court general equitable power to cancel penalties for delinquent payment of property taxes.[3] The Court of Appeal rejected this argument, concluding, in effect, that subdivision (c) merely granted the courts jurisdiction to cancel delinquency penalties when the conditions of subdivision (a) or (b) were met. (*Strumpfer, supra*, at pp. 1048–1049.) In remanding the case to the trial court for factfinding and application of the specific "parameters" of subdivisions (a) and (b), the court stated, in a footnote: "We observe that a 'balancing of equities' test is not an option under section 4985.2." (139 Cal.App.4th at p. 1052, fn. 14.)

to harmonize the language used by the statute to avoid an absurd result and to accomplish, insofar as it may be ascertained, the legislative purpose. (*In re Bandmann* (1958) 51 Cal.2d 388, 393 [333 P.2d 339].) In the present case, as noted, there is no conflict between the requirements that the cause for the delinquency be both reasonable and beyond the taxpayer's control.

[3] See footnote 1, *ante*, page 382.

The foregoing resources do not provide much assistance in affirmatively construing section 4985.2. Nevertheless, the Legislature's long-standing use of the specific, multipart test set forth in the statute and the *Strumpfer* court's rejection of a generalized equitable standard for relief do lead us to reject appellant's primary contention on appeal, that section 4985.2 permits a court to grant relief from a penalty when the court concludes the taxpayer has made an "innocent or trivial" mistake that caused the delinquency. That simply is not the standard established by the statute.

Recognizing that section 4985.2 sets forth four specific requirements for relief from the delinquency penalty, appellant also contends the evidence establishes facts that meet the requirements. Appellant contends the evidence does not suggest "willful neglect" on its part, and we agree. However, we do not agree that the evidence establishes reasonable cause, circumstances beyond the taxpayer's control, and exercise of ordinary care. Accordingly, whether reviewed de novo (see, e.g., *People v. Adair* (2003) 29 Cal.4th 895, 908 [129 Cal.Rptr.2d 799, 62 P.3d 45] [determination of "no reasonable cause" to believe defendant committed crime reviewed de novo on appeal]) or for abuse of discretion (see, e.g., *People v. Hinkel* (2005) 125 Cal.App.4th 845, 852 [22 Cal.Rptr.3d 895] [determination of "reasonable cause" to believe defendant would not again abuse drugs reviewed for abuse of discretion]), we conclude appellant is not entitled to cancellation of the penalty.

A substantial part of appellant's argument in the trial court and on appeal contrasts the minor nature of its error with the significance of the consequences. Thus, appellant asserts a gross disparity between merely placing the checks in the wrong envelope and a half-million dollar penalty. It is appealing to describe a $551,011.88 penalty as an unfair windfall to the county, though a $100 penalty on an individual taxpayer's $1,000 tax installment would not readily be characterized in the same way, even though both penalties might result from placing the tax check in the wrong envelope.[4]

■ But the reverse is also true: The standard for "ordinary care" and "reasonable" action by the taxpayer are appropriately elevated when the amount at stake is not a $1,000 tax installment but is, instead, a $5.5 million installment on behalf of 4,400 taxpayers. It may or may not be reasonable for an individual sitting at the kitchen table paying bills on December 1 to mistakenly place his or her tax check in the envelope with the telephone bill. But whether that is or is not reasonable and can occur despite "ordinary care," that circumstance is entirely different from the situation in a professional office providing tax payment services for and on behalf of thousands of

---

[4] The parties impliedly assume appellant has no greater or lesser rights in this matter than would the property owner. For purposes of this appeal, we make the same assumption.

individuals. "Ordinary care," in such circumstances, must include a recognition of the stakes involved. Thus, the size of the penalty is not shockingly large; instead, the size of the penalty is merely a reflection of the level of "ordinary care" required in the circumstances.[5] On the present record, appellant has not demonstrated that it has established quality-control procedures to minimize errors or has taken any other steps that might establish the exercise of ordinary care under all of the circumstances.

In addition, we find unconvincing appellant's contention that the delinquency, in the statutory language, "was due to . . . circumstances beyond [the] taxpayer's control." Appellant contends the actions of San Francisco in depositing the checks and failing to notify appellant of its error prior to the final date for payment of the tax installment constitute "circumstances beyond the taxpayer's control." While we agree that those circumstances were beyond appellant's control, we disagree with appellant's implied assertion that those circumstances *caused* the delinquency, that is, that the delinquency was "due to" those circumstances. First, and most obviously, the delinquency was caused by appellant's failure to send the payment to the correct address, a circumstance clearly within appellant's control. Second, appellant's failure to discover its own error in time to prevent the delinquency was within its own control. Thus, appellant's evidence does not establish that it had any procedures in place even to keep track of actual deliveries by its delivery service (such a control mechanism clearly would have shown the absence of any delivery to Stanislaus County, even if it might not have shown where the checks had been sent). Whether appellant tracked delivery of its packages against a control list, or had a system for confirming receipt of payment by telephone, or had some different control mechanism, the creation and implementation of such a system clearly is within appellant's control. Appellant's failure to discover its error in a timely fashion is, as far as the present record shows, a function of its own failure to set up a system to make such discoveries.

██ We conclude that, in the circumstances of this case and, particularly, in the absence of a showing that appellant had adequate systems in place to prevent and discover the kind of mistake that occurred here, appellant has failed to show that the delinquency was due to "reasonable cause and circumstances beyond the person's control" or that the delinquency occurred "notwithstanding the exercise of ordinary care" by appellant. (§ 4985.2, subd. (a).)

---

[5] The idea that ordinary care and reasonableness must account for the surrounding circumstances and the magnitude of foreseeable harm is common to all areas of law. (See, e.g., 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 867–868, pp. 95–97 [application in negligence context].)

## Disposition

The judgment is affirmed. Respondent is awarded costs on appeal.

Cornell, Acting P. J., and Hill, J., concurred.