Filed 2/2/15

<u>CERTIFIED FOR PUBLICATION</u>

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ASHLAN PARK CENTER LLC, | F069221 |
| Plaintiff and Appellant, | (Super. Ct. No. 13CECG02876) |
| v. | |
| VICKI CROW, as Treasurer-Tax Collector, etc., | **OPINION** |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Fresno County. Jeffrey Y. Hamilton, Jr., Judge.

Stoel Rives, Michael N. Mills and Juliet H. Cho for Plaintiff and Appellant.

Daniel C. Cederborg, County Counsel, and Michael R. Linden, Deputy County Counsel for Defendant and Respondent.

-ooOoo-

Appellant appeals from a judgment entered after the trial court sustained respondent's demurrer to appellant's amended petition for writ of mandate without leave to amend. We find no error and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Petitioner filed an amended petition for writ of mandate, alleging it is the owner of a shopping center purchased in March of 2013. It purchased the property from five limited liability companies that owned the property as tenants in common (TICs). The prior owners purchased the property in 2006; in 2008, the nation's financial market collapsed resulting in a recession. Because of the recession, when some of the shopping center's tenants did not renew their leases or were unable to open their businesses in the shopping center, the spaces remained vacant. The relationship of the prior owners was governed by a tenancy in common agreement, which provided that each TIC was responsible for a pro rata share of the operating costs, including property taxes. If the income from the property was insufficient to cover operating costs, the managing TIC was responsible for calling for capital from each TIC. When the managing TIC did so, however, the other TICs, which were single asset entities, were prevented by limited capital from contributing to the capital calls. The TICs were unable to meet the financial obligations of the property and were unable to pay the property taxes beginning in 2010. When petitioner purchased the property, taxes assessed for fiscal years 2010-2011, 2011-2012, and 2012-2013 were unpaid and delinquent. Petitioner assumed the liability for the unpaid property taxes.

As of September 11, 2013, delinquent taxes and penalties owed on the property totaled approximately $568,627.94. In August 2013, petitioner requested that respondent tax collector cancel the penalties pursuant to Revenue and Taxation Code section 4985.2, subdivision (a).[1] The statute provides that a penalty resulting from failure to make a timely property tax payment may be canceled by the tax collector if the failure "is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred

---

[1]     All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

2

notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent." (§ 4985.2, subd. (a).)

Respondent determined only $2,670.10 of the $142,521.68 in outstanding penalties should be waived. This amount represented the penalty for the second installment of taxes due in the 2012-2013 fiscal year. This penalty was cancelled because respondent's office incorrectly mailed the tax statement for that installment to the previous owners' address. Regarding the remainder of the penalties, respondent stated there were no provisions in law for waiver of late penalties for other fiscal years. Petitioner met with respondent and others and explained the basis for the request for cancellation of penalties, and indicated it was willing to pay the underlying taxes. Respondent again denied petitioner's request for cancellation.

Respondent demurred to the amended petition. The trial court sustained the demurrer without leave to amend, concluding a writ of mandate was not the appropriate remedy for the tax collector's refusal to cancel the penalties; payment of the tax was a prerequisite to cancellation of the penalties and the taxes had not been paid; and the facts alleged did not satisfy the statutory requirements for cancellation of the penalties. Judgment was entered and petitioner appealed.

### *DISCUSSION*

### I.      **Standard of Review**

"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. [Citations.] First, the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] In doing so, we accept as true the properly pleaded material factual

3

allegations of the complaint, together with facts that may be properly judicially noticed. Reversible error exists only if facts were alleged showing entitlement to relief under any possible legal theory. [Citations.]

"Second, where the demurrer is sustained without leave to amend, reviewing courts determine whether the trial court abused its discretion in doing so. [Citations.] On review of the trial court's refusal to grant leave to amend, we will only reverse for abuse of discretion if we determine there is a reasonable possibility the pleading can be cured by amendment. Otherwise, the trial court's decision will be affirmed for lack of abuse. [Citations.]" (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497-1498.)

In reviewing a judgment on a petition for writ of mandate, "[w]e review the trial court's findings of fact for substantial evidence, and review its legal conclusions, including its interpretation of statutory provisions, under a de novo standard of review. [Citations.]" (*First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218, 225 (*First American*).)

## II. Application of Section 4985.2

Section 4985.2 provides, in pertinent part:

> "Any penalty, costs, or other charges resulting from tax delinquency may be canceled by the auditor or the tax collector upon a finding of any of the following:

> "(a) Failure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect, provided the principal payment for the proper amount of the tax due is made no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent." (§ 4985.2, subd. (a).)

The statute establishes four separate requirements that must be met in order to entitle a taxpayer to cancellation of the penalties: "the delay in payment (1) was 'due to reasonable cause,' (2) was due to 'circumstances beyond the taxpayer's control,' (3)

4

occurred 'notwithstanding the exercise of ordinary care,' and (4) occurred 'in the absence of willful neglect.' [Citation.]" (*First American*, *supra*, 196 Cal.App.4th at p. 225.) If all the requirements are met, the tax collector is required to grant relief. (*People ex rel. Strumpfer v. Westoaks Investment #27* (2006) 139 Cal.App.4th 1038, 1050.) If any of the four requirements is not met, the taxpayer is not entitled to cancellation of the penalties. (*First American, supra,* at p. 225.)

Petitioner contends its predecessors' failure to timely pay the property taxes was due to reasonable cause and circumstances beyond the predecessors' control because it was caused by an unforeseen economic recession which resulted in the property failing to generate sufficient income to enable the owners to pay the taxes. Petitioner asserts the inability to pay occurred despite the previous owners' exercise of ordinary care in attempting to keep the shopping center fully leased and producing income, and was not the result of any willful neglect.

Section 4985.2 does not define the terms it contains, including "reasonable cause" and "beyond the taxpayer's control." "The legislative history for section 4985.2 is largely unenlightening" regarding the meaning of the language used. (*ZC Real Estate Tax Solutions Ltd. v. Ford* (2010) 191 Cal.App.4th 378, 383 (*ZC Real Estate*).) "In a letter to the Governor urging him to sign the legislation, the sponsor of the bill stated: 'The thrust of the measure is aimed at people who are hospitalized or quite ill and cannot make a timely property tax payment due to the circumstances.' [Citation.]" (*Ibid*.) The cases applying the statute have addressed situations involving clerical errors, rather than facts similar to those presented here.

In *ZC Real Estate*, lenders with secured interests in real property contracted with the plaintiff to make and monitor property tax payments on behalf of the property owners. (*ZC Real Estate*, *supra*, 191 Cal.App.4th at pp. 380-381.) The lenders sent payment to the plaintiff, but the plaintiff's employee sent the checks to the wrong county

tax collector. (*Id*. at p. 381.) The plaintiff proffered payment to the correct county two days beyond the delinquency date. (*Ibid*.) The county tax collector refused to cancel the tax penalty pursuant to section 4985.2. (*ZC Real Estate, supra,* at p. 382.)

While the court agreed there was no evidence of willful neglect by the plaintiff, it concluded the evidence did not establish reasonable cause, circumstances beyond the plaintiff's control, or exercise of ordinary care. (*ZC Real Estate*, *supra*, 191 Cal.App.4th at p. 384.) The plaintiff, a professional office providing tax payment services for thousands of individuals, sent a $5.5 million payment on behalf of 4,400 taxpayers to the wrong address. The plaintiff did not demonstrate it had established quality control procedures to minimize such errors or had taken other steps to show an exercise of ordinary care under the circumstances. (*Id*. at p. 385.) The act that caused the delinquency—failing to send the payment to the correct address—was a circumstance clearly within the plaintiff's control. (*Ibid*.) The failure to discover the error in time to prevent delinquency was also within the plaintiff's control; the plaintiff had no control procedures to track delivery or otherwise confirm receipt. (*Ibid*.) Consequently, the court concluded the plaintiff failed to show that the delinquency was due to reasonable cause and circumstances beyond its control, or that it occurred notwithstanding the exercise of ordinary care by the plaintiff. (*Ibid*.)

In *First American*, the plaintiff, which provided tax services to lenders and was responsible for making payments of property taxes on behalf of property owners, sent approximately $60 million in payments by 13 wire transfers. (*First American, supra*, 196 Cal.App.4th at pp. 221-222.) It failed to timely send approximately $6 million on behalf of Bank of America, "because of an internal error in formatting a spreadsheet used in making the wire transfers," which resulted in the amount intended to be transferred for Bank of America being hidden, so the payment was overlooked. (*Id*. at p. 222.) The plaintiff sent the omitted payment one day late, and the tax collector charged a 10 percent

6

penalty. (*Ibid.*) The plaintiff sought cancellation of the penalty pursuant to section 4985.2, subdivision (a). (*First American, supra,* at p. 222.)

The court concluded the clerical error did not constitute circumstances beyond the plaintiff's control. (*First American, supra*, 196 Cal.App.4th at pp. 225-226.) It noted the plaintiff's error in formatting the spreadsheet was very similar to the error in *ZC Real Estate*. "Both are clerical errors that were plainly inadvertent, but which were within the parties' control and avoidable. In this case, the payment would have been timely if First American would have acted differently in formatting its spreadsheet, in designing its processes for initiating wire transfers or in taking additional steps to confirm wire transfers before the payment deadline." (*First American, supra,* at p. 227.) The court rejected the plaintiff's contention circumstances beyond the taxpayer's control should be found in any situation in which the taxpayer exercised ordinary care and avoided willful neglect, because that interpretation would effectively eliminate from the statute the requirement that the circumstances causing the delinquency be beyond the taxpayer's control. (*Id.* at pp. 227, 230.) Because the inadvertent clerical error that caused the late payment was not beyond the plaintiff's control, despite the exercise of ordinary care, the statutory requirements for cancellation of the late penalty were not met. (*Id.* at p. 226.)

In *AvalonBay Communities, Inc. v. County of Los Angeles* (2011) 197 Cal.App.4th 890 (*AvalonBay*), AvalonBay prepared an internal funds transfer request and forwarded it to its cash management department (CMD). That department inadvertently failed to timely process the payment, and it was not made until two days late. (*Id.* at p. 894.) AvalonBay subsequently took corrective action to change its accounting system to prevent any similar mistakes in the future. (*Ibid.*) The tax collector refused to cancel the late penalty, concluding the delay in payment was caused solely by employee error. (*Id.* at pp. 894-895.)

7

The court concluded the situation could not be distinguished from that in *ZC Real Estate*. (*AvalonBay*, *supra*, 197 Cal.App.4th at p. 901.) The delinquent payment was the result of AvalonBay's mistakes. The CMD manager overlooked the funds transfer request. "The manager's assistant, who was supposed to verify that all approved fund requests were processed in a timely manner, was a newly hired employee whose inexperience directly contributed to the late payment. Moreover, the company's computer accounting system had no control mechanism in place to notify the CMD manager of outstanding fund transfer requests. Thus, as in *ZC Real Estate*, the factors that caused the delinquent payment—employee error and lack of any control mechanism—were clearly within Avalon's control and, as a result, section 4985.2, subdivision (a), [was] inapplicable." (*Ibid*.)

The alleged cause of petitioner's delinquent payment was not a clerical error, but its predecessors' inability to pay at the time payment was due. Petitioner attributes this inability to an economic recession that made it difficult to lease spaces in its shopping center and reduced its predecessors' income from the property. Whether a taxpayer's inability to pay its taxes when due because of a recession constitutes grounds for cancellation of delinquency penalties under section 4985.2 appears to be a question of first impression.

Based on the scant legislative history discussed in prior cases and common sense, we interpret the statute to address primarily an inadvertent failure to make a tax payment by the due date, not an inability to pay the tax. In other words, the statute primarily contemplates circumstances that interfere with the taxpayer's ability to deliver the payment to the tax collector before the delinquency date. It was not intended to apply to a taxpayer's general financial difficulties or claimed lack of financial resources to pay the tax at the time it is due. We do not construe the term "circumstances beyond the taxpayer's control" to include the failure of commercial property to generate sufficient

8

income to cover all of its operating expenses, regardless of the cause. The term also does not encompass general economic conditions affecting all, or a substantial portion, of the taxpayers within the taxing authority's jurisdiction.

In the cases discussed above, the courts concluded relief was not authorized by section 4985.2, where the taxpayer paid a day or two late due to clerical error, because the error and the failure to discover it in time were within the taxpayer's control. Here, the taxpayer failed to pay the property taxes for three fiscal years beginning in 2010, and petitioner still had not paid them when the amended petition was filed in November 2013. Petitioner does not allege any inadvertence in the failure to pay. Petitioner attempts to blame the failure to pay on time on an economic recession that allegedly rendered the taxpayer unable to pay the tax because the property failed to generate sufficient income to it. Interpreting the statute to allow cancellation of delinquency penalties due to a recession would seriously impede the tax collector's efforts to collect both the penalties and the underlying tax payments, which are necessary to the continued provision of essential services to the public. We do not believe section 4985.2 was intended to be a far-reaching exception to the requirement that taxpayers pay a penalty for late payment of their property taxes. We do not believe it was intended to permit every commercial property owner adversely affected by an economic downturn or recession to postpone payment of its property taxes indefinitely, without payment of a delinquency penalty, while continuing to operate the property and receive its income.

Additionally, while the recession may have been beyond the taxpayer's control, it was not the recession that directly caused the former owners' failure to timely pay the taxes. The petition alleged that, after respondent refused to cancel the penalties, petitioner met with respondent and "explained the facts and ownership structure that burdened the previous owners and prohibited them from paying the underlying taxes in a timely manner." It alleged the prior owners were five limited liability companies who

9

owned the property as TICs; their relationship was governed by an agreement that required each TIC to pay a pro rata share of the costs of operating the property, including the property taxes. The agreement provided that, if the income from the property was insufficient to pay the operating costs, the TICs were to make capital contributions at the managing TIC's request. However, because the owners were single asset entities and the high vacancy rates persisted, they lacked the financial ability to contribute the necessary capital. The petition also alleged the shopping center remained 50 percent vacant at the time the petition was filed, giving rise to an inference the shopping center was 50 percent occupied.

Thus, according to the petition, it was the previous owners' ownership structure that caused them to be unable to afford to pay the taxes on the property. For purposes of section 4985.2, however, the ownership structure of the prior owners was a matter within their control. The owners' choice whether to pay the taxes out of the income from the existing tenants was also a matter within the owners' control, as was enforcement of the tenancy in common agreement to require the TICs to respond to the capital calls of the managing TIC.

Instead of paying the taxes and penalties, the former owners sold the property to petitioner and petitioner assumed the owners' liabilities, including liability for the unpaid taxes. Petitioner's interpretation of the statute would permit a taxpayer who was financially unable to pay its property taxes to sell the property to a new owner and pass along to that owner the liability for the delinquent taxes and penalties. The new owner, however, who purchased the property knowing of the liability for the taxes and the delinquency penalties, presumably paid a price that reflected that liability, and assumed the liability through the purchase of the property, could nonetheless avoid the delinquency penalties it agreed to assume by asserting the financial difficulties of the

10

prior owner. We do not believe the Legislature intended section 4985.2 to afford such broad relief.

We conclude the statute was intended to provide relief from delinquency penalties to a taxpayer who was prevented by outside forces, beyond its control, from making its tax payment to the tax collector before the delinquency date. Such outside forces might include the sudden hospitalization of the taxpayer, who was thereby prevented from carrying on his normal business activities, or an earthquake or other natural disaster that disrupted mail and electronic delivery systems, temporarily preventing delivery of the payment. The statute might also apply where, through the fraud or other wrongdoing of a third party, there was uncertainty about who owned the real property and was liable for payment of the property taxes. We conclude the statute was not intended as a broad-ranging remedy for a particular taxpayer's adverse financial situation or for a general economic recession. The trial court did not err in sustaining the demurrer on the ground the facts alleged in the petition did not entitle petitioner to relief from the penalties under section 4985.2, subdivision (a).[2]

## III.    Leave to Amend

Denial of leave to amend is an abuse of discretion if there is a reasonable possibility the pleading could be cured by amendment. (*Lee v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 848, 854.) The burden is on petitioner to demonstrate that his pleading can be amended to state a cause of action; it is not up to the court to determine how the pleading can be amended. (*Ibid*.) Petitioner requests that, if the judgment is not reversed in its entirety, petitioner at least be granted leave to amend its petition. Petitioner has not suggested in what way the petition can be

---

[2]    Because we find this ground is sufficient to uphold the trial court's order sustaining the demurrer, we need not address the trial court's other stated grounds for sustaining it.

11

amended to cure the defects. Accordingly, petitioner has not established an abuse of discretion in the trial court's denial of leave to amend.

## ***DISPOSITION***

The judgment is affirmed. Respondent is entitled to her costs on appeal.

_____

FRANSON, J.

WE CONCUR:

_____

LEVY, Acting P.J.

_____

CORNELL, J.