Filed 12/22/15  Purple Hat Dwarf v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| PURPLE HAT DWARF, LLC, | B259499 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC499763) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Malcolm H. Mackey, Judge.  Affirmed.

Law Office of Lloyd K. Chapman, Lloyd Chapman for Plaintiff and Appellant.

Mark J. Saladino, County Counsel, Mary C. Wickham, Interim County Counsel, Sayuj Panicker, Deputy County Counsel, for Defendant and Respondent.

_____

Appellant contends that the trial court improperly adopted a settled statement of trial proceedings, erred by finding in favor of respondent at trial, and should have allowed a jury to make factual determinations. None of these contentions holds merit. Accordingly, we affirm.

## BACKGROUND

Plaintiff and appellant Purple Hat Dwarf, LLC (Dwarf), filed a complaint against defendant and respondent County of Los Angeles (the County) in January 2013. In its operative first amended complaint (FAC), Dwarf alleged that, after it purchased commercial real property in the City of Los Angeles in February 2010, the County billed excessive property taxes. According to the FAC, Dwarf paid these taxes while simultaneously notifying the County that the tax charges were incorrect. Even though the parties engaged in numerous meetings and discussions, the County continued to seek alleged deficiencies, as well as penalties and interest. Dwarf's FAC sought a refund of over $100,000 in penalties, costs, and interest.

### Judgment

A bench trial was held in July 2014. At the conclusion of the trial, the court found in favor of the County, determining that "tax penalties and interest were not arbitrary or capricious." The court further found that when Dwarf purchased the property, taxes on the property were delinquent, a situation that could be remedied only by payment of the delinquent taxes or a sale of the property by the County for nonpayment. Dwarf failed to make timely payment and did not show that its failure was due to reasonable cause and circumstances beyond Dwarf's control, or that it exercised ordinary care. Accordingly, Dwarf was not entitled to a refund.

Judgment was entered in favor of the County on August 1, 2014. Dwarf filed a notice of appeal from the judgment.

### Settled statement

More than a month after filing its notice of appeal, Dwarf filed a notice designating the record on appeal, as well as a motion to use a settled statement in lieu of a

reporter's transcript, as the trial proceedings were not transcribed. Attached to the motion was a proposed settled statement of the trial proceedings prepared by Dwarf.

The trial court granted the motion to use a settled statement on December 12, 2014. That same day, the County filed an objection to the proposed settled statement submitted by Dwarf, arguing that it was prematurely filed. Dwarf responded that the County's objection was untimely and that the proposed statement should be adopted as the settled statement. On December 23, 2014, the trial court issued an order deeming Dwarf's proposed statement to be filed on December 15, 2014, and allowing the County to file objections and proposed amendments to the proposed statement.

The County submitted proposed amendments on January 5, 2015. On February 5, 2015, Dwarf filed objections to the proposed amendments. The next day, the trial court ordered that the record of the proceedings be settled in the manner proposed by the County.

In pertinent part, the adopted settled statement described the trial proceedings as follows:

**Jeff Katofsky**

Jeff Katofsky, the managing member of Dwarf, testified that Dwarf purchased the property in February 2010 for slightly less than $1 million. At the time Dwarf bought the property, it was not aware of any delinquent property taxes, and did not become aware of the possibility of a delinquency until June 2010. Dwarf immediately made a $10,000 payment to the County and began investigating the claimed deficiency.

Katofsky testified that Dwarf believed the County was required to reassess the property based upon Dwarf's 2010 purchase price and to impose taxes based on the reassessment. Taxes charged to the previous owner were based on an assessment of $2.2 million, resulting in yearly taxes of $28,000. Dwarf believed that the new tax charge should be approximately $12,000. Based on this understanding, Dwarf believed that tax roll information was incorrect because it was based on the previous tax basis and that $10,000 should be the approximate amount due for past taxes. On June 15, 2010, the County inquired whether Dwarf's $10,000 payment should be applied to "current taxes or

3

delinquent taxes," and Dwarf's office manager purportedly replied "delinquent taxes." Katofsky testified that the County instead applied the payment to interest and penalties and continued to charge interest and penalties on the tax delinquency.

Dwarf believed that the County did not immediately reassess the property and continued to set taxes using the prior owner's assessment. When the county sent bills, a Dwarf representative spoke with individuals at the County offices regarding the billing. Katofsky testified that Dwarf was promised that mistakes would be corrected and that it could ignore the incorrect billing. Katofsky believed that the County reassessed the property in October 2010, retroactive to the date of purchase, at $980,000.

Katofsky further testified that Dwarf received two checks in November 2010 for "'refunds of overpaid property taxes'" in the amounts of $15,361.44 and $5,090.70. Upon receiving these refunds, Dwarf believed that the County had corrected all errors, balanced the books, and refunded all overpaid taxes. At that point, Dwarf believed that it was fully current on all tax obligations.

Dwarf made additional payments in September 2011, notating on the checks that they were for payment of property taxes only and not for payment of disputed penalties and interest. The County, however, applied those payments to penalties and interest and not property taxes, and then imposed penalties and interest on the outstanding tax liability.

In April 2012, the County sent a bill of $63,000 for purported back taxes. It also sent a letter to the prior owner demanding payment of back taxes, giving notice that the property would be sold unless the delinquency was paid. Katofsky testified that Dwarf received no notice of sale.

Katofsky went to the County offices in April 2012. An employee in the Assessor's Office verified that the property was reassessed in October 2010. Katofsky then filed a claim in the "special investigations" unit and was told that all payments would be applied to penalties first, not delinquent or owing taxes. He was further advised that all money sent by Dwarf to the County was being applied to penalties. After meeting

with other staff members, he was told that the billing would be corrected and all payments properly applied, leaving Dwarf with a credit balance.

In August 2012, Dwarf received a recorded notice to sell the property for tax default. To try to stop the default process, Katofsky submitted an application for redemption by installment plan, but the application was rejected. He then filed with the County a claim for damages.

Katofsky subsequently received another notice from the County, still billing 2009-2010 and 2010-2011 taxes at an assessed property value of approximately $2.3 million. Katofsky spoke with a County claims department employee, who advised him that previously billed taxes would be moved to the unsecured tax roll, resulting in billing being revised and a credit and/or refund issued to Dwarf. Katofsky was subsequently told, however, that the transfer to the unsecured tax roll would not be allowed. Furthermore, in October 2012, the County rejected Dwarf's claim for damages.

Dwarf paid all amounts demanded by the County. Katofsky calculated that it overpaid the County more than $78,000, but claimed that Dwarf never received a refund.

Under cross-examination, Katofsky acknowledged that shortly after Dwarf bought the property, it received documents from the County stating that delinquent taxes were owing on the property. Katofsky also admitted that Dwarf paid less than amounts demanded in property tax bills, but said that Dwarf did not pay the full amounts because it believed the bills were erroneous.

**Susan Huff**

Susan Huff, assessment appeals chief with the County, testified on behalf of the County. Huff performed a search to determine whether Dwarf appealed the valuation assessment of $980,000 after its purchase of the property, and could find no record of an appeal.

**Kenneth Press**

Kenneth Press, operations chief in the secured property division, also testified on behalf of the County. He stated that tax payments are generally due on December 10 and April 10 of any given tax year and are considered defaulted if not paid by July 1. If

5

payments are not made on time a 10 percent penalty is assessed, and if taxes are not paid in full after a default, redemption penalties accrue at a rate of 1.5 percent per month. The only way to cure a default is to pay in full the "redemtion amount," i.e. all delinquent taxes, penalties, interest, and costs. Any payment less than the redemption amount is treated as a partial payment and is applied to penalties and interest first before any remaining amount is applied to the principal balance.

The subject property became tax-defaulted in July 2009. The property was not redeemed until January 2013.

Press further testified that taxpayers can check the tax status of their property by contacting the County tax collector by phone, e-mail, or in person, or by checking the tax collector's website for tax status information. A property owner can request a cancellation of tax penalties, and the tax collector may cancel penalties and associated interest pursuant to Revenue and Taxation Code section 4985.2. Dwarf made a request for cancellation of penalties.

Finally, Press testified regarding a letter the County sent to Dwarf in September 2013. The letter referenced an application by Dwarf to transfer property taxes to the previous owner. The letter stated that a transfer of taxes was not proper because the tax deficiency existed at the time Dwarf purchased the property.

After summarizing the testimony, the settled statement concluded by reiterating the trial court's findings, stating: "Plaintiff presented no facts or evidence which show that Plaintiff's failure to make a timely payment is due to reasonable cause and circumstances beyond Plaintiff's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect. All the allegations show is that when Plaintiff purchased the Property, the taxes were delinquent. Under Revenue and Taxation Code Sections 2187 and 2194, the taxes remained [a] lien on the property which could only be removed by payment of the taxes, or sale by the County for nonpayment, hence no refund."

6

## DISCUSSION

### I. **The settled statement was properly entered**

Dwarf argues that the statement of proceedings was improperly settled. Dwarf contends that, by filing a proposed settled statement in conjunction with its motion to use a settled statement, it forced the County's hand, requiring it to object to Dwarf's proposed settled statement prior to the hearing on the motion to use a settled statement. Because the County did not timely object to Dwarf's proposed settled statement, Dwarf asserts, the trial court had no choice but to deem Dwarf's proposed statement the final settled statement.

Dwarf's argument relies on a misreading of California Rules of Court, rule 8.137 (rule 8.137). Rule 8.137(b)(1) states, in pertinent part: "Within 30 days after the superior court clerk mails, or a party serves, an order granting a motion to use a settled statement, the appellant must serve and file in superior court a condensed narrative of the oral proceedings that the appellant believes necessary for the appeal." This rule means what it says: an appellant must serve and file its proposed settled statement after the trial court grants the motion to use a settled statement. Dwarf's contention that it could submit its proposed settled statement prior to the time the trial court heard its motion, and that this submission started the clock on the County's right to object to the proposed statement, is directly contrary to the language of rule 8.137(b)(1).

Dwarf is also incorrect that the County did not comply with rule 8.137(b)(4), which provides that, within 20 days after the appellant serves its proposed statement, a respondent may serve and file proposed amendments. Consistent with its inherent power to exercise reasonable control of proceedings (see *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351), the trial court deemed the proposed statement submitted on December 15, 2014. The County's filing of amendments on Monday, January 5, 2015,

was therefore timely. Furthermore, Dwarf does not show that it suffered any harm in connection with the trial court's setting of a date for the settlement hearing.[1]

## II. Dwarf does not establish it is owed $14,408.80

Dwarf contends that it was undisputed at trial that it paid $14,408.80 to the County but was never credited for this payment. As the appellant, it is Dwarf's burden to demonstrate, by a sufficient record, that the trial court erred in refusing to award damages for this asserted payment. (Code Civ. Proc., § 475; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448.)

In its opening brief, Dwarf points to an exhibit—a copy of a cancelled check to the County in the subject amount—that was received into evidence at trial. Dwarf avers that the check did not appear on any accounting by the County or its documents prepared for trial, and that the County offered no explanation on how this check was allocated or handled.

This argument is insufficient to demonstrate trial court error. The settled statement contains no mention of the asserted payment. It is entirely possible that the payment was properly allocated in a manner not reflected in the exhibits, or that trial testimony otherwise established that no credit was due. Without a thorough record of how (or if) the asserted payment was addressed at trial, we are in no position to reverse.

## III. The trial court properly denied a refund

Dwarf argues that it was entitled to a refund of tax penalties and interest. It contends that, when it purchased the property in 2010, it did not have knowledge of tax

---

[1] The issue of whether the settling of the statement is properly before the Court was not briefed by the parties. Separately appealable postjudgment orders are not reviewable on appeal from a judgment. (See *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173; *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43.) Another issue not raised by the parties is that Dwarf's motion to use a settled statement appears to have been untimely under rules 8.137 and 8.121. We need not address the effect of either of these deficiencies, however, since Dwarf's argument fails for the reasons stated above.

deficiencies assessed in 2009, which were the fault of the previous owner. It further contends that it attempted to pay the delinquent taxes with a $10,000 check, and that it repeatedly spoke to County staff, who promised that the issue would be resolved.

Dwarf's request for a refund of penalties and interest was governed by Revenue and Taxation Code section 4985.2, subdivision (a) (section 4985.2), which states, in pertinent part: "Any penalty, costs, or other charges resulting from tax delinquency may be canceled by the auditor or the tax collector upon a finding of any of the following: [¶] (a) Failure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect . . . ." Thus, to obtain a cancelation of penalties, Dwarf was required to show four criteria were met: "the delay in payment (1) was 'due to reasonable cause,' (2) was due to 'circumstances beyond the taxpayer's control,' (3) occurred 'notwithstanding the exercise of ordinary care,' and (4) occurred 'in the absence of willful neglect.'" (*First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218, 225 (*First American*).)

A challenge to a tax official's decision denying cancellation under section 4985.2 is made by a Code of Civil Procedure section 1085 petition for traditional mandamus. (*People ex rel. Strumpfer v. Westoaks Investment #27* (2006) 139 Cal.App.4th 1038, 1050; *Ashlan Park Center LLC v. Crow* (2015) 233 Cal.App.4th 1274, 1278 (*Ashlan Park*).) In a mandamus action, the trial court determines whether the local entity's action was "arbitrary or palpably unreasonable." (*County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973.) On an appeal from the judgment, we "'review the trial court's findings of fact for substantial evidence, and review its legal conclusions, including its interpretation of statutory provisions, under a de novo standard of review.'" (*Ashlan Park*, *supra*, 233 Cal.App.4th at p. 1278.)

A decision denying cancellation of a tax penalty is not lightly overturned. In *ZC Real Estate Tax Solutions Ltd. v. Ford* (2010) 191 Cal.App.4th 378, the plaintiff initially sent payment to the wrong county's tax collector; by the time the payment reached the correct tax collector, it was two days past the delinquency date. (*Id.* at p.

9

381.) The county refused to cancel the tax penalty. In concluding the evidence did not establish reasonable cause, circumstances beyond the plaintiff's control, or exercise of ordinary care, the court found that the plaintiff's act of placing checks in an envelope addressed incorrectly was a circumstance within the plaintiff's control and was not indicative of ordinary care. (*Id.* at pp. 384-385.) In *First American*, a similar mistake led to payment being one day late. Again, the court refused to cancel the penalty imposed, finding that, although the mistake was clearly inadvertent, it was within the plaintiff's control and was avoidable. (*First American*, *supra*, 196 Cal.App.4th 218, 225-227.) Likewise, in *AvalonBay Communities, Inc. v. County of Los Angeles* (2011) 197 Cal.App.4th 890, 901 (*AvalonBay*), the court found that employee error and a lack of control mechanisms, which led to a payment being late by two days, were matters within the plaintiff's control.

Here, we see no reason to disturb the trial court's finding that Dwarf did not establish that its failure to make timely payment was due to reasonable cause and circumstances beyond its control, and that it occurred notwithstanding the exercise of ordinary care and in the absence of willful neglect. In contrast to the aforementioned cases, in which payment was made one or two days late, the property here was not redeemed until January 2013, even though default occurred in July 2009. Furthermore, Dwarf did not show that it exercised ordinary care and that the late payment was due to circumstances beyond its control. By its own admission, Dwarf was aware that delinquent taxes were owing on the property soon after purchase. And, in any event, the County presented evidence that it is relatively simple to check the tax status of a property, so Dwarf had no valid reason not to discover and remediate the delinquency earlier.

Indeed, the evidence shows that Dwarf's failure to make timely payment was not due to an inadvertent omission or circumstances beyond its control; it was a deliberate choice. Dwarf believed it owed less than the amount billed, so it made partial payments and attempted to negotiate a credit with County staff. These were acts clearly within Dwarf's control. If Dwarf made immediate payment upon discovering the tax deficiency, it might have had a better argument regarding cancellation or refund. Instead, it

consistently refused to pay the full amount billed and only corrected the default nearly three years after it purchased the property.[2] Under these circumstances, the trial court was clearly justified in denying Dwarf's request for cancellation or refund.

## IV. Dwarf had no right to a jury trial

Dwarf argues that it was entitled to a jury trial and that the trial court's refusal to empanel a jury was reversible error. The authority that Dwarf cites, however, directly contradicts this argument. In *AvalonBay*, the court noted, "Although '[t]here is no right to a jury trial in a mandamus proceeding . . . ,' [Code of Civil Procedure] section 1090 permits the trial court 'to grant one if there is an issue of fact essential to resolution of the case.'" (*AvalonBay*, *supra*, 197 Cal. App. 4th 890, 905.) Code of Civil Procedure section 1090 makes clear that the trial court's decision whether to order a question of fact tried to a jury in a mandamus action is within "its discretion." The trial court here exercised its discretion to have all matters tried before the court. Dwarf does not show that the trial court erred by doing so.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.        HOFFSTADT, J.

---

[2]     Moreover, the record does not demonstrate that Dwarf even attempted to demonstrate that the default occurring under the prior owner, in July 2009, was excusable. Without a showing that penalties imposed at that time should be cancelled, Dwarf could not possibly prove its case. (See *Ashlan Park*, *supra*, 233 Cal.App.4th 1274, 1282-1283 [plaintiff's argument that prior owner was unable to pay taxes due to economic recession did not provide grounds to cancel penalties].)

11