Filed 4/26/22 (unmodified opn. and prior 4/22/22 publication order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GAJANAN, INC., et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>    Defendants and Appellants. | A160539<br><br>(San Francisco County<br>Super. Ct. No. CGC16554309<br>[consolidated with<br>CGC16550351, CGC16550354,<br>CGC16554304])<br>ORDER MODIFYING OPINION |

BY THE COURT:

It is ordered that the opinion filed herein on March 30, 2022 and certified for publication on April 22, 2022, be modified as follows:

Replace the first sentence in footnote 21 on page 22 with the following text:

"In the trial court, the City argued that when a taxpayer files a return after a Notice of Determination is issued, the City is authorized to apply the penalty in section 6.17-1, subdivision (a) "*in addition to*" the penalty in section 6.11-3, subdivision (a), but the City elects to limit the penalties imposed to those in section 6.11-3, subdivision (a)."

This modification does not change the judgment.

Dated:_____          _____
                                                              Richman, Acting P.J.

1

Court:  San Francisco County Superior Court

Trial Judge:  Hon. Gail Dekreon

Dennis J. Herrera, City Attorney, Scott M. Reiber, Chief Tax Attorney, Thomas S. Lakritz, Deputy City Attorney, for Defendants and Appellants

Silverstein & Pomerantz, Amy L. Silverstein, Robert Petraglia, John Ormonde, Adam Hooberman, for Plaintiffs and Respondents

A160539, *Gajanan, Inc. et al. v. City and County of San Francisco et al.*

Filed 3/30/22 Certified for Publication 4/22/22 (ordered attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GAJANAN, INC. et al.,<br><br>　　　Plaintiffs and Respondents,<br>v.<br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>　　　Defendants and Appellants. | A160539<br><br>(San Francisco County Super. Ct. No. CGC16554309 [consolidated with CGC16550351, CGC16550354, CGC16554304]) |

The owners and operators of six San Francisco boutique hotels filed suit against the City and County of San Francisco and its Office of the Treasurer and Tax Collector (collectively, the City) seeking refunds of about $1.7 million in penalties the City had assessed for failure to timely file returns and pay certain hotel taxes.  The hotel owners and operators contended they were entitled to refunds under section 6.17-4 of the San Francisco Business and Tax Regulations Code because, exercising ordinary care, they had hired and then relied on an employee to file the returns and make the payments, only to learn after the taxes were past due that the

1

employee was dishonest and had never filed the returns or paid the taxes.[1] After an eight-day bench trial, judgment was entered in favor of the hotel owners and operators.

The City raises two main arguments in this appeal. The first concerns the interpretation of section 6.17-4, which, during the period at issue in 2014, required the waiver of certain penalties when "[f]ailure to make timely payment or report of tax liability . . . occurred notwithstanding the exercise of ordinary care by the taxpayer." (S.F. Ord. No. 291-10, amending section 6.17-4.) The City argues that as a matter of law, reliance on an employee cannot constitute ordinary care under section 6.17-4, no matter how careful plaintiffs were in hiring and supervising the employee. The City's second argument is that even if the hotel owners and operators were entitled to refunds of some penalties under section 6.17-4 as a result of their employee's dishonesty, other penalties had been assessed under section 6.11-3, a Code section to which the refund provision of section 6.17-4 does not apply.

We decline to adopt the City's interpretation of section 6.17-4 as it was then written, and we conclude that the penalties authorized by section 6.11-3 do not apply in the circumstances of this case. Accordingly, we shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Our summary draws on the trial court's statement of decision and the evidence admitted at trial.[2]

---

[1] All statutory references are to the San Francisco Business and Tax Regulations Code (the Code) as effective in 2014 unless otherwise stated. The various Code provisions discussed in this opinion have since been amended. (See, e.g., S.F. Ord. No. 207-20.)

[2] The material facts are largely undisputed. The parties dispute certain facts concerning whether the City imposed any penalties under a

A.    *Failure to Pay Taxes and Imposition of Penalties*

The plaintiffs in this matter are seven business entities associated with six different "boutique" hotels.[3]  The parties sometimes refer to the plaintiffs in two groups, as do we.  Four plaintiffs are the "hotel owners":  AGPME Tenant LLC (AGPME), KPH Management LLC (KPH), Mangal Inc. (Mangal), and Gajanan Inc. (Gajanan).[4]  The other three plaintiffs, referred to as "Engage," are hotel management companies founded by Yvonne Detert, who was their CEO and president.[5]

The hotel owners contracted with Engage to manage and staff the six hotels.  The hotel owners testified that Engage had been managing hotels for a long time and was doing a good job, and that Detert, who had more than 30 years' experience in the hotel industry and had owned and operated several boutique hotels in San Francisco, had a good reputation for running boutique hotels.  In November 2013, Detert hired Santiago Hernandez as controller for Engage after confirming that Hernandez had the requisite experience and credentials, and after having him interviewed and vetted by experienced hospitality industry professionals.

---

particular Code provision, section 6.11-3.  We address this issue in the discussion section, *post*, and conclude that we need not resolve the dispute.

[3] According to plaintiffs' expert, a "boutique hotel" is generally a hotel with fewer than 250 rooms that is operated "with a certain type of personality, decor, lifestyle," and is not affiliated with a brand.

[4] AGPME owned the Steinhart Hotel, Hotel Diva, and Hotel Union Square; KPH leased the Kensington Park Hotel; Mangal owned the Country Hearth Inn; and Gajanan owned the Buena Vista Inn.

[5] The Engage entities are Engage Hospitality LLC, Engage with Hospitality SF LLC, and Lombard Hospitality LLC.

Norbert Mede, who was retained by plaintiffs as an expert on the operations of boutique hotels, specifically with regard to ensuring that hotel taxes are filed and paid, testified that it is common for the owner of a boutique hotel to hire a management company to run the hotel, and opined that Engage was qualified to run the hotels here. He also opined that Engage had hired a qualified controller in hiring Hernandez.

Hernandez was informed that his duties included paying the San Francisco transient occupancy tax, the tourism improvement district fee, and the Moscone expansion district fee (the hotel taxes). The hotels collected these taxes from their guests on behalf of the City and deposited them in an account accessible to Engage. An employee at Engage (not Hernandez) had been responsible for paying the hotel taxes for plaintiffs' hotels in 2013. But when Hernandez was hired, Hernandez informed the employee that he would pay the hotel taxes from that point on. In fact, Hernandez failed to pay the hotel taxes for the fourth quarter of 2013 through the third quarter of 2014, and then concealed his failure to pay by lying to plaintiffs and providing them false balance sheets and journal entries that made it appear the hotel taxes had been paid as required by law.

Meanwhile, at various times in 2014, the hotel owners received form letters from the City stating that hotel tax filings for particular periods had not been received. The letters provided instructions for filing and paying the hotel taxes, and advised that the recipient is "subject to penalties, interest and other fees for failure to timely file, per Article 6 of the . . . Code."

When the hotel owners asked Hernandez about the letters from the City, Hernandez told them the City had made mistakes. He said the taxes had been paid, and the City had credited them to the wrong account name. Many of the letters from the City in fact failed to identify hotel names and

4

account numbers, and many were sent to different addresses or referred to different account numbers from month to month. The trial court found that this lent support to Hernandez's statements that the taxes were being incorrectly credited, when in truth Hernandez was concealing from hotel owners that the taxes had not been paid.

At different points in 2014, hotel owners complained that Hernandez failed to provide certain reports or provided them late. Engage executives questioned Hernandez about these issues and offered help. Hernandez told them the problems were caused by the new accounting system that he was responsible for implementing and said he needed no help.[6]

In January 2015, Detert (the CEO of Engage) hired a forensic accounting team as auditors to investigate the problems with late and missing reports. The balance sheets that the auditors reviewed (apparently the false balance sheets that Hernandez had prepared) did not show any delinquency for hotel taxes, and the auditors did not discover that the hotel taxes had not been paid. But the auditors did discover that Hernandez had made an unauthorized transfer from the account of one of the hotel owners to an Engage account. When Detert confronted Hernandez about the matter, Hernandez claimed it was a mistake and said he would correct it. As soon as the money was transferred back to the correct account, Hernandez was terminated.

---

[6] Plaintiffs' expert Mede opined that it was reasonable for the hotel owners to rely on Engage to pay the hotel taxes and for Engage to rely on Hernandez. Mede also testified that plaintiffs' monitoring of Hernandez was consistent with ordinary care in the boutique hotel industry, and that in his view it was reasonable for plaintiffs to believe in 2014 that the hotel taxes were being paid.

Also in January 2015, the City sent AGPME and KPH "Notices of Determination" stating that the City had "computed and determined" the amounts owed for the periods in which they had "failed to file a return" for the accounts of their hotels. Each notice stated it was provided under section 6.11-3 of the Code and identified a total amount due that was described as including taxes, "applicable penalties," interest, and administrative fees. The payment invoices that were included with these notices show, for each of the three hotel taxes, the amount owed by each hotel by month, but did not indicate which penalties applied or how any tax, penalty, or interest had been determined or calculated. The trial court found that these January notices were the first notification by the City to any plaintiff that payment of a hotel tax for 2014 was delinquent.

Two days after Hernandez was terminated, Detert learned that AGPME had received a letter (presumably the Notice of Determination) from the City stating that the hotel taxes for its hotels had not been paid and that the City had determined that over $1 million was due. It was after this that Engage's new controller discovered that Hernandez had altered journal entries and balance statements to make it look as though the hotel taxes were being paid. In January and February 2015, plaintiffs paid the delinquent hotel taxes for all six hotels.

In June and July 2015, after returns had been filed by the hotels, the City gave plaintiffs spreadsheets that showed the City's calculations of penalties for each hotel. The spreadsheets did not identify the Code sections under which the penalties were being assessed. Detert paid the penalties.

C.    *Claims for Refunds*

After paying the taxes and penalties, plaintiffs submitted claims for refund of the penalties to the City. Plaintiffs contended they were entitled to

6

refunds under section 6.17-4 because they had exercised ordinary care in hiring a highly-recommended, experienced controller to file the hotel tax returns, and the late payments occurred as a result of the controller's unanticipated irresponsibility and dishonesty. Plaintiffs stated they reasonably expected the controller to follow their standard routines and long-standing procedures for collecting and paying the taxes, and that the controller had provided records disguising the non-payment to prevent them from learning the true facts. The City denied the claims for refunds, stating that plaintiffs had not met the requirements set forth in section 6.17-4.

D.    *Proceedings in the Trial Court*

In 2016, plaintiffs filed four separate actions in San Francisco Superior Court, later consolidated, each alleging the same two causes of action seeking a refund of penalties. The first cause of action alleged that because plaintiffs exercised ordinary care, section 6.17-4 entitled them to refunds of penalties assessed against them under sections 6.17-1, 6.17-2, and 6.17-3.[7] The second cause of action alleged that under the facts of the case, the penalty provisions of sections 6.17-1, 6.17-2, and 6.17-3 were "inapplicable."

The City contended that it had correctly assessed tax penalties under sections 6.11-3, 6.17-1, 6.17-2, and 6.17-3.[8] The City denied that plaintiffs

---

[7] As relevant here, section 6.17-1 imposes penalties for delinquent payment of tax; section 6.17-2 imposes penalties for underreporting tax liability, section 6.17-3 imposes penalties for late filing of tax returns, and section 6.17-4 authorizes refunds of penalties imposed under those three Code sections under certain circumstances. (SF. Ord. No. 271-13, amending §§ 6.17-1, 6.17-2, & 6.17-3; S.F. Ord. No. 291-10, amending section 6.17-4.)

[8] As relevant here, section 6.11-3, subdivision (a), authorizes the City to estimate tax liability for periods in which a taxpayer "fails to make a timely return or remittance" and adds a 20 percent penalty to the amount of the estimate. (S.F. Ord. No. 206-13, amending section 6.11-3.)

7

were entitled to any refund of the penalties, arguing that plaintiffs did not meet their burden of proving they had exercised ordinary care under section 6.17-4, and that even if plaintiffs had shown ordinary care, they would not be entitled to refunds of any of the penalties that had been imposed under a different part of the Code—section 6.11-3—to which the refund provision of section 6.17-4 did not apply.

Over the course of an eight-day bench trial, the court heard testimony from 14 witnesses and considered more than 100 exhibits.  In a 21-page statement of decision that included 100 enumerated findings of fact, the court concluded that the penalties at issue had been assessed under sections 6.17-1, 6.17-2, and 6.17-3, and not 6.11-3.  The court found that there was no evidence of willful neglect by plaintiffs, and that plaintiffs established they exercised "ordinary business care and prudence in the payment of their tax obligations."  Accordingly, plaintiffs were entitled to refunds of the penalties under section 6.17-4.[9]  Judgment was entered in plaintiffs' favor, with the court awarding refunds of hotel tax penalties and interest amounting to about $1,700,000.  The City timely appealed.

---

[9] The court also concluded that penalties purportedly imposed under sections 6.17-1, 6.17-2, and 6.17-3 were not supported by the evidence, and ruled in favor of plaintiffs on their second cause of action.

# DISCUSSION

A. *Applicable Law and Standard of Review*

  1. *Code Provisions*

   a. *Penalties*

Section 6.11-3 authorizes the City to impose a penalty of 20 percent of the *estimated* tax due when the taxpayer has not filed a return or made a remittance of tax owed.[10]

Section 6.17-1, subdivision (a), imposes a penalty for the failure to timely pay tax or to timely collect and remit third-party taxes. (S.F. Ord. No. 271-13, amending section 6.17-1.) The penalty is five percent of the tax for each month or fraction of a month during which payment is delinquent, up to 20 percent, with an additional 20 percent penalty on tax remaining unpaid for a period of 90 days after notification that the tax is delinquent. (*Ibid.*) Notably, the section 6.11-3 penalty is based on tax liability that has been estimated by the City, while the section 6.17-1 penalty is based on actual tax liability.

---

  [10] As relevant here, section 6.11-3, subdivision (a) provides: "If any taxpayer or person responsible for paying a tax or remitting a third-party tax fails to make a timely return or remittance, the Tax Collector may make a determination based upon an estimate of the total tax liability of the taxpayer. The estimate shall be made for the period or periods in respect to which the person failed to timely make a return or failed to timely remit a tax, and may be based upon any information which is in the Tax Collector's possession or may come into his or her possession. Upon the basis of this estimate, the Tax Collector shall compute and determine the amount required to be paid to the City, adding to the sum thus computed a penalty equal to 20 percent thereof. One or more determinations may be made for one or more than one period. Any such determination shall be prima facie evidence of the person's liability in any subsequent administrative or judicial proceeding." (S.F. Ord. No. 206-13, amending section 6.11-3.)

Section 6.17-2, subdivision (c), authorizes a penalty for "substantial underreporting of tax," defined as occurring when "the tax finally determined by the Tax Collector exceeds the amount of tax reported on a taxpayer's original or amended return for a taxable period by 25 percent or more, or if no return is filed, the tax liability determined by the Tax Collector pursuant to section 6.11-1 exceeds $5000."[11] (S.F. Ord. No. 271-13, amending section 6.17-2.) The penalty is "50 percent of the tax attributable to the substantially underreported amount." (*Ibid.*)

Section 6.17-3, subdivision (b),[12] authorizes a penalty of up to $500 for the failure to timely file a required return. (S.F. Ord. No. 271-13, amending section 6.17-3.)

        b.        *Waiver of Penalties*

Section 6.17-4, subdivision (a), provided that the City may waive the imposition of penalties imposed under sections 6.17-1, -2 and -3 when "*[f]ailure to make timely payment or report of tax liability . . . occurred notwithstanding the exercise of ordinary care by the taxpayer and in the absence of wilful neglect.*"[13] (S.F. Ord. No. 291-10, amending section 6.17-4,

---

[11] Section 6.11-1 authorizes the Tax Collector to determine a tax deficiency when a taxpayer failed to pay or underpaid a tax, with the deficiency computed based upon the taxpayer's returns or "any other information within the Tax Collector's possession." (S.F. Ord. No. 206-13, amending section 6.11-1.) The hotels here filed their tax returns late, but it does not appear that the City ever contended that taxes were underreported on those returns.

[12] This subsection has since been moved to section 6.17-3, subdivision (c). (S.F. Ord. No. 36-17, amending section 6.17-3.)

[13] Although section 6.17.4 states that penalties "may" be waived, waiver is mandatory if the taxpayer establishes the requisite factual predicate. (See *AvalonBay Communities, Inc. v. County of Los Angeles* (2011) 197

10

emphasis added.) Willful neglect by plaintiffs is not at issue; the City does not contest the trial court's conclusion that there was no evidence of willful neglect.

2. *Standard of Review*

The taxpayer has the burden of proof in an action for refund of tax penalties. (*Air Couriers International v. Employment Development Dept.* (2007) 150 Cal.App.4th 923.)

We apply well-established standards of review to a judgment based upon a statement of decision issued after a bench trial. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) We review questions of law de novo and we review the trial court's findings of fact under the substantial evidence standard. (*Ibid.*) We construe findings of fact liberally to support the judgment; consider the evidence in the light most favorable to the judgment; draw all reasonable inferences in support of the findings; and infer that the trial court " 'impliedly made every factual finding necessary to support its decision.' " (*Ibid.*)

This appeal raises issues of statutory construction, which are subject to de novo review. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082 (*MacIsaac*).) Our task is to determine the " '[lawmakers'] intent so as to effectuate the law's purpose.' " (*Skidgel v. California Unemployment Ins. Appeals Board* (2021) 12 Cal.5th 1, 14 (*Skidgel*).) We look first to the words of the statute itself. (*Ibid.*; *MacIsaac*, *supra*, 134 Cal.App.4th at p. 1082 [statutory language is the "most reliable indicator" of legislative intent because it " ' "has successfully braved the legislative gauntlet" ' "]; *Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502

Cal.App.4th 890, 898-899 [discussing the interpretation of similar language in Rev. & Tax. Code, § 4985.2].)

11

[rules of statutory construction apply to local ordinances].) We construe the words of a statute in context, giving them " 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac*, *supra*, 134 Cal.App.4th at p. 1083.) We harmonize particular clauses and sections of a statute " 'by considering them in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls.' " (*Skidgel*, *supra*, 12 Cal.5th at p. 14; see also *Lennane v. Franchise Tax Board* (1994) 9 Cal.4th 263, 271, fn. 8 ["construing unambiguous language in tax statutes according to the ordinary meaning of the words used is consistent with the [California Legislature's] goal of 'understandable tax laws' "].) Any ambiguity in a statute that imposes tax penalties is "strictly construed in favor of the taxpayer." (*River Garden Retirement Home v. Franchise Tax Board* (2010) 186 Cal.App.4th 922, 955, fn. 13 (*River Garden*).)

B.    *Analysis*

The City argues that as a matter of law, reliance on an employee cannot constitute "ordinary care" that would require the refund of penalties under section 6.17-4 for failure to file and remit hotel taxes, regardless how careful the taxpayer is in hiring and supervising the employee, and even if the employee lies about filing the returns and paying the taxes. The City also makes the backstop argument that it imposed certain penalties under section 6.11-3. Therefore, according to the City, even if the trial court was correct in concluding that plaintiffs exercised ordinary care and are entitled to refunds of penalties imposed under sections 6.17-1, 6.17-2, and 6.17-3, plaintiffs are not entitled to refunds of penalties imposed under section 6.11-3.[14]

---

[14] The City makes these arguments in challenging the judgment as it pertains to plaintiffs' first cause of action. Because we shall affirm the

### 1. *"Ordinary Care" Standard of Section 6.17-4*

To restate, section 6.17-4, as it existed at the time, provided for a waiver of taxpayer penalties when "[f]ailure to make timely payment or report of tax liability . . . occurred notwithstanding the exercise of ordinary care by the taxpayer and in the absence of wilful neglect." (S.F. Ord. No. 291-10, amending section 6.17-4.) Whether plaintiffs are entitled to refunds of the penalties imposed here turns on the meaning of the phrase "ordinary care" in section 6.17-4. "Ordinary care" is not specifically defined in the Code, so we give it " 'a plain and commonsense meaning.' " (*MacIsaac*, *supra*, 134 Cal.App.4th at p. 1083.)

"Ordinary care" has been defined to mean "the degree of care that a prudent and competent person engaged in the same line of business or endeavor would exercise under similar circumstances." (Black's Law Dict. (11th ed. 2019) p. 263, col. 1.) Black's Law Dictionary explains that the term refers to "a test of liability for negligence."[15] (*Ibid.*) It is not surprising, then,

_____

judgment on the first cause of action, we do not reach the parties' arguments as to the second cause of action. Briefly, plaintiffs contended in their second cause of action that penalty provisions are "inapplicable" because the City failed to provide notice of a delinquency as required for certain penalties under section 6.17-1; there was no "substantial underreporting of tax," required for penalties under section 6.17-2; and the penalties attributed by the City to section 6.17-3 differ in amount from those authorized by statute. The City argues on appeal that the penalties were imposed in accordance with the statutes and that plaintiffs filed a deficient claim under Government Code sections 905 and 910, and therefore failed to exhaust their administrative remedies with respect to claims that the City failed to meet the requirements for imposing penalties under sections 6.17-1, 6.17-2, and 6.17-3.

[15] CACI No. 401 explains that "Negligence is the failure to use reasonable care to prevent harm to oneself or others. [¶] . . . A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably

13

that section 6.17-4 contrasts "ordinary care" with "wilful neglect." (S.F. Ord. No. 291-10, amending section 6.17-4.)  We interpret the phrase "ordinary care" in section 6.17-4 to have the meaning attributed to the phrase "ordinary care" in the context of negligence, as set forth in Black's Law Dictionary.

The City points out that federal law imposes a penalty for failure to timely file a tax return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect" (26 U.S.C. § 6651(a)(1)) and contends that this language is "nearly identical" to the language in section 6.17-4.  The City argues that we should interpret "notwithstanding the exercise of ordinary care" in section 6.17-4 as equivalent to "absent reasonable cause" in 26 United States Code section 6651, and relies on *U.S. v. Boyle* (1985) 469 U.S. 241, 252 (*Boyle*), in which the Supreme Court held that a taxpayer's reliance on an outside agent to prepare and file a return did not constitute "reasonable cause" under 26 United States Code section 6651.  This argument is not persuasive.  The language of the federal statute differs significantly from section 6.17-4 as it existed at the time relevant for this case:  the federal statute includes the phrase "reasonable cause," which has a particular meaning in the context of tax penalties, and which did not appear in section 6.17-4.

*Boyle* interprets "reasonable cause" as it was used in a federal statute. As the Supreme Court explained in *Boyle*, the term "reasonable cause" in 26 United States Code section 6651 must be interpreted in light of a Treasury regulation specifying that "to demonstrate 'reasonable cause' a taxpayer filing a late return must show that he 'exercised ordinary business care and

careful person would do in the same situation."  CACI No. 401 instructs the jury that it "must decide how a reasonably careful person would have acted" in the circumstances.

14

prudence and was nevertheless unable to file the return within the prescribed time.' " (*Boyle*, *supra*, 469 U.S. at p. 243, quoting 26 C.F.R. § 302.6651-1(c)(1) (1984).)  The Supreme Court noted that while administrative regulations and practices exempted late filings from penalties when lateness resulted from "postal delays, illness, and other factors largely beyond the taxpayer's control," they did not address the effect of a taxpayer's reliance on an agent. (*Id.* at p. 248, fn. 6.)  *Boyle* enacted a "rule with as 'bright' a line as can be drawn consistent with the statute and implementing regulations," in holding that reliance on an agent is not "reasonable cause" under 26 United States Code section 6651(a)(1).  (*Id.* at pp. 248, 250.)  Under *Boyle*, "reasonable cause" requires more than just the exercise of ordinary care; it requires some type of disability as well.  But in any event, section 6.17-4, which we are interpreting here, does not include the phrase "reasonable cause."

Nor are we persuaded by the City's citations to authorities that interpret the phrase "reasonable cause" as it appears in the context of various California tax provisions.  Once again, those authorities lack persuasive value because "reasonable cause" does not appear in the statute that we must interpret in this case.  (See *First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218, 227-230 [emphasizing the need to give effect to the actual language of the statute at issue].)

The City observes that before 2010 (and long before the reporting period at issue here), there were two waiver provisions in section 6.17-4 that applied to penalties for failure to timely file returns or pay tax.  (See S.F. Ord. No. 291-10, amending § 6.17-4.)  Subdivision (a) provided for waiver of penalties when the failure "was due to reasonable cause and not wilful

15

neglect," and subdivision (b) provided for waiver when the failure "occurred notwithstanding the exercise of ordinary care by the taxpayer and in the absence of wilful neglect." (*Ibid.*) In 2010, the Board of Supervisors amended section 6.17-4 by removing former subdivision (a) altogether, leaving only subdivision (b) (and recasting it as subdivision (a)). (*Ibid.*) Referring to the brief legislative digest that is part of the record, the City argues on appeal that in amending section 6.17-4, the Board of Supervisors "expressly stated" that the standard a taxpayer must meet to qualify for a waiver remained unchanged. This misstates the record. There is no express statement to that effect in the legislative digest. The digest states that the amendments to Article 6 "revise provisions relating to . . . enforcement procedures and penalties; and . . . otherwise clarify and update the provisions of Article 6." The digest includes short bullet points describing some but not all of the effects of the amendments, and states that the amendments "strengthen the [City's] ability to enforce the City's taxes." The digest concludes by stating that the amendments "also correct errors, delete outdated provisions and make other nonsubstantive changes to clarify the existing law."

The City reads too much into the legislative digest, which does not purport to account for all the effects of the 2010 amendment, says nothing about section 6.17-4, and says nothing specific about the standards for waiver. We presume that in changing the language of section 6.17-4 by eliminating what had been subdivision (a), the Board of Supervisors intended to change the meaning of the section by eliminating the "reasonable cause" standard in that subdivision. (See *People v. Trevino* (2001) 26 Cal.4th 237, 242 ["When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning"]; *Hochsler*

16

*v. Sacramento City Unified School District* (2007) 149 Cal.App.4th 258, 269 [" 'Where the Legislature omits a particular provision in a later enactment related to the same subject matter, such deliberate omission indicates a different intention which may not be supplanted in the process of judicial construction.' [Citation.] Moreover, '[t]he Legislature "is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof" ' "].)

In any event, by the time this case arose, the term "reasonable cause" was long gone from section 6.17-4, and we decline to interpret "ordinary care" as incorporating the "reasonable cause" standard of *Boyle*. Further, there is no ambiguity as to the meaning of "ordinary care" in section 6.17-4. Even if there were, we would interpret the statute in the taxpayer's favor, applying the more lenient standard of "ordinary care" as opposed to the more demanding status imposed in *Boyle*. (*River Garden*, *supra*, 186 Cal.App.4th at p. 955, fn. 13.) Thus, we give the term "ordinary care" its plain meaning.[16]

Having construed the meaning of "ordinary care," we now consider whether the trial court's conclusion that plaintiffs exercised ordinary business care and prudence is supported by substantial evidence. We conclude it is. Plaintiffs produced evidence that they exercised ordinary care

_____

[16] After the trial court entered judgment in favor of plaintiffs in this case, the San Francisco Board of Supervisors changed the standard for waiver of penalties by incorporating language similar to the federal statute and authorities on which the City here relies. Effective in 2021, penalties imposed under sections 6.17-1, 6.17-2, and 6.17-3 may be waived if "[t]he failure to timely pay, remit, collect, or report the tax liability, [or] the failure to file a return . . . *is due to reasonable cause and circumstances beyond the taxpayer's control, and* occurred notwithstanding the exercise of ordinary care in the absence of willful neglect." (S.F. Ord. No. 207-20, adding section 6.17-4.1, italics added.)

in connection with the filing and payment of hotel taxes: they hired a qualified company to manage the hotels, as is common in the industry; the management company hired a qualified individual who was responsible to pay the taxes; and that employee did not pay the taxes but made it appear to plaintiffs as though the taxes had been paid by lying to them, providing them with false financial statements, and offering plausible explanations for the non-filing notices that the Hotel Owners received from the City.

In its reply brief, the City argues for the first time that even if the ordinary care standard is interpreted to permit reliance on an agent or employee, plaintiffs did not present evidence sufficient to establish that they exercised ordinary care. This argument has been forfeited, first, because the argument is not raised in the City's opening brief (*Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.* (2007) 156 Cal.App.4th 1469, 1486), and second because the City failed to set forth all the relevant evidence in its opening brief. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief must "[p]rovide a summary of the significant facts"].)[17]

2.      *Imposition of Penalties Under Section 6.11-3*

The parties agree that all the hotel tax penalties imposed against the Gajanan and Mangal hotels were based on Code sections that are subject to waiver of penalties under section 6.17-4, as were the penalties imposed against the AGPME and KPH hotels for the months of January, October, November, and December of 2014 and some of the penalties imposed against the AGPME and KPH hotels for the months of February through September

_____

[17] The City's opening brief devotes two paragraphs (amounting to less than one page) in its statement of facts to what it characterizes as the "failure to timely file returns and remit hotel taxes."

18

2014. But the parties do not agree as to some of the penalties imposed on the AGPME and KPH hotels for the months of February through September 2014. The City contends that in those months for those hotels, it imposed penalties under sections 6.11-3, 6.17-2, and 6.17-3, and the penalties imposed under section 6.11-3 are not subject to waiver. (S.F. Ord. No. 291-10 [section 6.17-4 applies to penalties or interest assessed under sections 6.17-1, 6.17-2, or 6.17-3].) Plaintiffs contend that the penalties the City assessed against them and attributed to section 6.11-3 could *only* have been assessed under section 6.17-1, which means they are waivable. We will use the term "disputed penalties" here to refer to the penalties the City attributes to section 6.11-3.

a.    *Additional Background*

The City was never clear about the statutory basis for imposing the disputed penalties against AGPME and KPH. [18] The City's June 2015 "Notice of Determination and Redetermination," concerning the tax liability of the AGPME and KPH hotels was sent with spreadsheets showing "Monthly Hotel Payments, Penalties & Interest Calculation" through June 1,

_____

[18] The City contends that it presented undisputed evidence that the disputed penalties were assessed under section 6.11-3, subdivision (a). The City's evidence consists of the June 2015 notice and spreadsheets, and testimony from the City's director of business tax explaining how the spreadsheets should be interpreted. But the City's director of business tax testified that the City has no records predating those June 2015 spreadsheets that would show that the disputed penalties were computed under section 6.11-3, and acknowledged that the spreadsheets did not reference section 6.11-3. Plaintiffs contend that they presented evidence that the City originally assessed penalties under section 6.17-1, subdivision (a), and only later retroactively attributed some of the penalties to section 6.11-3 as a litigation strategy after plaintiffs challenged the penalties. Because we conclude that as a matter of law section 6.11-3 does not apply in the circumstances before us, we need not resolve this factual dispute.

19

2015. Neither the June 2015 notice nor any of the accompanying spreadsheets refer to section 6.11-3 (or any other section under which a penalty was purportedly being imposed). The trial court found that although the disputed penalties were calculated under the heading "penalty 20%," which appeared to "correlate[ ]" to section 6.11-3, the City could not rely on that section in imposing these penalties because section 6.11-3 is inapplicable "under the facts of this case and the law."

      b.    *Section 6.11-3 Does Not Apply*

In urging that section 6.11-3 applies to the disputed penalties, the City argues that it was "forced" to issue the January 2015 notices of determination with respect to the hotel taxes due from the AGPME and KPH hotels for February through September 2014 because the hotels had not filed the required returns.[19] The City further argues that because it had issued notices of determination for those hotels and for those months, it imposed penalties under section 6.11-3 subdivision (a) (and also under sections 6.17-2 subdivision (c) and 6.17-3 subdivision (b)), and that the penalties imposed under each section are reflected on the spreadsheets the City sent in June 2015 with the Notice of Determination and Redetermination.[20] The City contends that section 6.11-3 applies to the disputed penalties by its terms. Plaintiffs dispute this point, and argue that under the plain terms of the

_____

[19] By contrast, Notices of Determination were not sent to Gajanan and Mangal until July 2015, *after* they had filed returns. The City does not explain why it was "forced" to issue notices of determination in January 2015 for the AGPME and KPH hotels, but not for the Gajanan and Mangal hotels, even though as of January 2015 none of the hotels had filed returns or paid hotel taxes for February through September 2014.

[20] The City contends that for the other months and hotels at issue in this case, it imposed penalties under sections 6.17-1, subdivision (a) and 6.17-3, subdivision (b).

Code, only section 6.17-1 penalties, and not section 6.11-3 penalties, could apply.

Plaintiffs have the stronger argument.

Section 6.11-3 applies when a taxpayer has not timely filed a return or paid tax, in which case the City *estimate*s the tax due, calculates a penalty based on that estimate, and sends the taxpayer a Notice of Determination. (§ 6.11-3, subds. (a) & (c); S.F. Ord. No. 206-13, amending section 6.11-3.) The City's determination is prima facie evidence of the taxpayer's liability "in any subsequent administrative or judicial proceeding." (§ 6.11-3, subd. (a).) But of course, prima facie evidence can be rebutted, and a taxpayer can rebut the estimate by presenting evidence of the tax that is actually due and filing a return; that is what plaintiffs did here. When an estimate has been rebutted and the actual tax liability is established, the penalty provision of section 6.11-3 (which based the penalty on an *estimate* of the taxes due) no longer applies; instead, the relevant penalty provision is section 6.17-1.

Section 6.17-1 applies when a taxpayer has failed to timely pay tax, but has filed a return, in which case the penalty is based upon the actual tax due, rather than upon an estimate. (S.F. Ord. No. 271-13, amending section 6.17-1; compare §§ 6.17-1, subd. (a) [penalty calculated on the basis of "tax"] and 6.11-3, subd. (a) [penalty calculated on the basis of "estimate"].)

The two sections, taken together, give the City authority to impose penalties whether a taxpayer files a return or not. If the taxpayer never files a return, the taxpayer is subject to a nonwaivable penalty based upon estimated tax liability. (§ 6.11-3, subd. (a).) If the taxpayer files a timely return but pays late, the taxpayer is subject to a penalty based on the actual amount due, and not on an estimate. (§ 6.17-1, subd. (a).) If the taxpayer files a late return and pays late after the City has issued a Notice of

21

Determination, the taxpayer is subject to a penalty based on the actual amount due if the taxpayer successfully rebuts the estimated liability reflected in the notice. (§ 6.17-1, subd. (a).)

In its opening brief, the City argues that section 6.17-1, subdivision (a), applies "where the city was not forced to issue a determination based on estimates," and that section 6.11-3 applies instead once a Notice of Determination has been issued. In other words, the City argues that once a Notice of Determination has been issued, section 6.17-1 cannot apply, even if a later return is filed. This position finds no support in the statutory language, because section 6.17-1, subdivision (a) says nothing about notices of determination or section 6.11-3. (S.F. Ord. No. 271-13, amending section 6.17-1.) And the City appears to argue that the penalty provision that applies to a late-filing taxpayer depends entirely upon the City's seemingly arbitrary decisions whether and when to issue Notices of Determination.[21]

The AGPME and KPH hotels filed their hotel tax returns and paid the actual taxes due after they received the January Notices of Determination, which were based on estimated tax liability. The late-filed returns served to

---

[21] In the trial court, the City argued that when a taxpayer files a return after a Notice of Determination is issued, the City is authorized to apply section 6.17-1, subdivision (a) *in addition to* the penalty in section 6.17-1, subdivision (a), the City elects to limit the penalties imposed to those in section 6.11-3, subdivision (a). The City does not make this argument on appeal, but does not expressly disavow it, either. We decline to adopt such an interpretation of the Code, which (as we understand the City's interpretation) would allow the City to make an arbitrary decision whether to apply one penalty or both penalties, and which would authorize the imposition of a larger penalty on a taxpayer who files a late return after receiving a Notice of Determination (and is subject to penalties under sections 6.11-3 and section 6.17-1) than on a taxpayer who files no return at all (and is subject only to penalties under section 6.11-3).

rebut the estimates made by the City under section 6.11-3, taking the hotels out of the realm of section 6.11-3 estimated liability and into the realm of section 6.17-1, subdivision (a), reported liability. Accordingly, the non-waivable penalty of section 6.11-3, subdivision (a) was no longer appropriate. Instead, any penalty would have to be assessed under section 6.17-1, subdivision (a), and would be subject to the waiver provision of section 6.17-4, which, as we discussed above, requires the refund of penalties in this case.

## DISPOSITION

The judgment is affirmed  Respondents shall recover their costs on appeal.

23

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Mayfield, J.[*]


A160539, *Gajanan, Inc. et al. v. City and County of San Francisco et al.*


---

[*] Judge of the Mendocino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GAJANAN, INC. et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>        Defendants and Appellants. | A160539<br><br>(San Francisco County Super. Ct. No. CGC16554309 [consolidated with CGC16550351, CGC16550354, CGC16554304]) |

BY THE COURT:

        The opinion in the above-entitled matter filed on March 30, 2022, was not certified for publication in the Official Reports.  For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____                    _____

                                           Richman, Acting P.J.

1

Court: San Francisco County Superior Court

Trial Judge: Hon. Gail Dekreon

Dennis J. Herrera, City Attorney, Scott M. Reiber, Chief Tax Attorney, Thomas S. Lakritz, Deputy City Attorney, for Defendants and Appellants

Silverstein & Pomerantz, Amy L. Silverstein, Robert Petraglia, John Ormonde, Adam Hooberman, for Plaintiffs and Respondents

A160539, *Gajanan, Inc. et al. v. City and County of San Francisco et al.*